**2021 IL 124832**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124832)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
HAYZE L. SCHOONOVER, Appellee.

*Opinion filed December 16, 2021.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville dissented, with opinion.

## OPINION

¶ 1 A jury found defendant, Hayze L. Schoonover, guilty of three counts of predatory criminal sexual assault of a child. At trial, the Champaign County circuit court invoked section 115-11 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/115-11 (West 2014)) to effectuate a temporary closure of the courtroom during the minor victim's testimony.

¶ 2    The appellate court majority reversed and remanded for a new trial after finding the trial court committed second-prong plain error for failing to inquire as to whether the spectators removed from the courtroom during the minor's testimony had a direct interest in the case.

¶ 3    We granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018). Finding no clear or obvious error under section 115-11 or the sixth amendment (U.S. Const., amend. VI), we reverse the appellate court and remand for further proceedings.

¶ 4                                    BACKGROUND

¶ 5    Defendant, Hayze L. Schoonover, was charged with four counts of predatory criminal sexual assault against his niece, M.L., a child under 13, in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(a)(1) (West 2014)). The State alleged defendant, who was over the age of 17, committed "act[s] of contact" with the victim, M.L., who was under the age of 13, for the purpose of defendant's sexual gratification, in that he touched M.L.'s vagina with his hand (count I), touched M.L.'s breasts with his hand (count II), placed his penis in M.L.'s mouth (count III), and placed his penis in M.L.'s hand (count IV).

¶ 6    Relevant here are the proceedings surrounding the temporary and partial closure of the courtroom during M.L.'s testimony at trial. The record reflects M.L. was the first to testify for the State. Prior to M.L.'s testimony, the trial court indicated its intention to have the courtroom cleared during M.L.'s testimony. The record reflects the following exchange:

"THE COURT: When [M.L.] testifies, I want the courtroom cleared except for family members.

MR. LARSON [(ASSISTANT STATE'S ATTORNEY)]: Thank you, Your Honor.

MR. ALLEGRETTI [(DEFENSE ATTORNEY)]: I'm sorry, Judge. [Defendant's] family members are here. Is that—are you barring them?

THE COURT: Out."

¶ 7     Other matters relevant to the trial proceedings were then addressed before returning to the issue of closing the courtroom during M.L.'s testimony. The record reflects the following discussion:

"THE COURT: All right. Well pursuant to [section 115-11 of the Code (725 ILCS 5/115-11 (West 2014))], where the alleged victim of the offense is a minor under eighteen years of age, the court may exclude from the proceedings while the victim is testifying all persons who, in the opinion of the court, do not have a direct interest in the case except the media. So I'm going to order that the courtroom be cleared, with the exception of the media, when [M.L.] testifies. I will note [defense counsel's] objection.[1]

MR. LARSON: Your Honor, if I may.

THE COURT: Yes.

MR. LARSON: The victim's grandmother is here and would like to remain.

THE COURT: She would be someone who is allowed to remain. All right. With that—

MR. ALLEGRETTI: Judge, I'm sorry. Just one thing before we get started. I just would like to make a standing objection to all 115-10 evidence.[2]

THE COURT: All right. The objection is overruled. Bring in the jurors."

---

[1]The record is devoid of any objection pertaining to section 115-11 (725 ILCS 5/115-11 (West 2014)) or the closure of the courtroom prior to the court's statement.

[2]Section 115-10 (725 ILCS 5/115-10 (West 2014)) permits the admission of out-of-court statements made by a victim in certain criminal cases as an exception to the hearsay rule. Prior to trial, the State filed a motion pursuant to section 115-10 to admit out-of-court statements made by M.L. to family members recounting her interactions with defendant. The trial court granted the State's motion and held it would allow the statements to be admitted if M.L. were unavailable to testify at trial.

¶ 8        After the parties' opening statements and prior to M.L. taking the stand, the following discussion occurred outside the presence of the jury:

> "THE COURT: All right. At this point pursuant to [section 115-11], I'm going to clear the courtroom. Mr. Larson, you said the grandmother is going to be present.
>
> MR. LARSON: Yes, Your Honor.
>
> THE COURT: Who else?
>
> MR. LARSON: Your Honor, her father and stepfather we would also ask to be present.
>
> THE COURT: Who is in the back of the courtroom? Who is the gentleman sitting there? And then the rest of the people on this side. All right. As soon as we get done with her testimony, I will bring the rest of the people in the courtroom."

¶ 9        After M.L. testified, the courtroom was reopened and remained open for the remainder of the trial. M.L. was subsequently recalled and testified a second time where she testified in open court.

¶ 10       The jury convicted defendant of three counts of predatory criminal sexual assault of a child, including counts I, III, and IV. The trial court sentenced defendant to consecutive imprisonment terms totaling 85 years.

¶ 11       In a posttrial motion for new trial, defendant alleged errors unrelated to the partial closure of the courtroom. The trial court denied the motion.

¶ 12       On appeal, defendant argued the partial closure violated section 115-11 of the Code (725 ILCS 5/115-11 (West 2014)) and his right to a public trial under the sixth amendment of the United States Constitution (U.S. Const., amend. VI). 2019 IL App (4th) 160882. Specifically, defendant argued he was denied his constitutional right to a public trial when the trial court cleared the courtroom during M.L.'s testimony pursuant to section 115-11. Defendant also maintained the court violated statutory requirements when clearing the courtroom and improperly excluded persons with a direct interest in his trial.

¶ 13     In response, the State argued defendant's claims were "waived" when counsel failed to object to the closure of the courtroom. Further, the State argued the record was devoid of any indication that the spectators who were excluded were immediate family members or otherwise had a direct interest in the case.

¶ 14     In a thorough discussion, the majority of the appellate court found defendant's claims were not waived but forfeited.[3] Although forfeited, the court reviewed the claims for plain error. The court found that noncompliance with the statute constituted second-prong plain error and denied defendant his right to a public trial. The court ultimately reasoned the trial court overstepped its authority under section 115-11 because it failed to make an express finding concerning the interests of those excluded. The court held:

> "The [trial] court's failure to make any inquiry indicates that it did not make an informed decision as to whether the family members brought to its attention had a direct interest in the proceedings prior to excluding them. Such action amounted to a blanket exclusion of anyone other than members of M.L.'s family and the media and constituted a violation of statutory requirements." 2019 IL App (4th) 160882, ¶ 29.

¶ 15     The appellate court majority reversed the convictions and remanded for a new trial. Justice DeArmond, in dissent, argued that, while the court should have conducted a greater inquiry into the identity and relationship of those present, defendant failed to sustain his burden or clearly express his objection. *Id.* ¶¶ 59-86 (DeArmond, J., dissenting).

¶ 16     This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 17                                    ANALYSIS

¶ 18     At issue is whether the trial court's partial and temporary closure and exclusion of spectators from the courtroom during M.L's testimony, without making an

---

[3]The issue of waiver is not raised before this court. Instead, the State raises the issue of forfeiture.

express determination as to whether each spectator asked to leave during the closure had a direct interest in the case, violated section 115-11 of the Code and, in turn, defendant's constitutional right to a public trial pursuant to the sixth amendment.

¶ 19 Whether an individual's constitutional rights have been violated is subject to *de novo* review. *People v. Hale*, 2013 IL 113140, ¶ 15. This case also presents an issue of statutory construction subject to *de novo* review. *People v. Hunter*, 2013 IL 114100, ¶ 12; *People v. Zimmerman*, 239 Ill. 2d 491, 497 (2010).

¶ 20 *Forfeiture*

¶ 21 First, we consider whether the issue is subject to review. The State argues (1) defendant forfeited his claims when he failed to object at trial and in a posttrial motion and (2) the appellate court erred when it excused defendant's forfeiture as second-prong plain error. Defendant acknowledges he failed to preserve his claims for appellate review; however, he maintains he is excused under the plain error doctrine.

¶ 22 "To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL 119445, ¶ 48. Failure to preserve an error results in forfeiture. *Id.*

¶ 23 Finding no objection to the removal of spectators from the courtroom on the record nor finding the issue raised in a posttrial motion, as well as recognizing defendant's acknowledgment that he failed to preserve his claim, we conclude defendant forfeited his claim.

¶ 24 *Plain Error*

¶ 25 Finding forfeiture, we consider whether defendant's forfeiture may be excused. A defendant's forfeiture may be excused under the plain error doctrine. *Id.* Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." As such, "remedial application of the plain error doctrine is discretionary." *People v. Clark*, 2016 IL 118845, ¶ 42.

¶ 26    "A defendant seeking plain-error review has the burden of persuasion to show the underlying forfeiture should be excused." *People v. Johnson*, 238 Ill. 2d 478, 485 (2010) (citing *People v. Herron*, 215 Ill. 2d 167, 187 (2005)). "The ultimate question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*." *Id.* (citing *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009)).

¶ 27    The plain error doctrine is applicable when a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant (first-prong plain error) or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process (second-prong plain error). *Clark*, 2016 IL 118845, ¶ 42.

¶ 28    The State argues the appellate court erred when it found second-prong plain error. The State contends a courtroom closure only exceeds the scope of section 115-11 when it in fact excludes the media or persons who have a direct interest in the case. The State notes the appellate court majority recognized that defendant did not in fact prove that persons with a direct interest in the case were improperly excluded from the courtroom during M.L.'s testimony. Further, while the trial court may solicit information from the parties to make a determination, section 115-11 does not mandate such a determination. Moreover, even if the court exceeded the scope of section 115-11 when it failed to further inquire about the remaining spectators, such failure does not amount to a violation of the sixth amendment.

¶ 29    Defendant argues section 115-11 serves as a limited pathway by which a trial judge can effect a partial courtroom closure without conducting the more complex *Waller* test. See generally *Waller v. Georgia*, 467 U.S. 39 (1984). As a result, a court's failure to strictly comply with section 115-11 places a court in "constitutional peril." Defendant posits that, absent section 115-11, a trial court must abide by the more stringent limitations established by the United States Supreme Court in *Waller*. See generally *id.* Further, defendant argues that failure to meet the requirements of section 115-11 necessarily results in a failure to meet constitutional standards. Defendant ultimately suggests this court should find that a statutory violation alone requires reversal.

¶ 30        The preliminary question of whether the plain error doctrine applies is whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 31        We start by determining whether section 115-11 applies. Section 115-11 states,

"In a prosecution for [certain sex offenses, including predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2014))], where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." 725 ILCS 5/115-11 (West 2014).

It is evident the statute applies here as defendant was charged with four counts of predatory criminal sexual assault of a child and the testifying witness was the victim, a minor. See *id.*

¶ 32        Section 115-11 also presents express limitations on the trial court's ability to close a courtroom: (1) the media shall not be excluded, (2) persons that, in the opinion of the court, with a direct interest in the case shall not be excluded, and (3) the exclusion may occur only while the minor victim is testifying. *Id.*

¶ 33        The State argues that, like in *People v. Falaster*, 173 Ill. 2d 220 (1996), the trial court here properly exercised its discretion under section 115-11 when it excluded defendant's nonimmediate family members without a direct interest in the outcome of the case. The State contends that the exclusion of the unidentified spectators did not plainly exceed the scope of section 115-11 nor was it clear or obvious error to make such an exclusion. In response, defendant argues the appellate court correctly determined the trial court's failure to comply with section 115-11 was error because no express findings were made.

¶ 34        In *Falaster*, 173 Ill. 2d at 222, the defendant was charged and convicted of two counts of aggravated criminal sexual assault, one count of criminal sexual assault, and one count of unlawful distribution of harmful material; the victim was a minor. The appellate court affirmed the defendant's convictions after, in part, rejecting the argument that the trial court improperly excluded spectators from a portion of the proceedings pursuant to section 115-11. *Id.* at 225. In affirming the appellate court, this court noted (1) the trial court did not close the trial (instead it ordered the

removal of spectators during the testimony of the 14-year-old victim), (2) the persons excluded were not immediate family members of the defendant and thus did not have a direct interest in the outcome of the case, and (3) the court did not impose any restrictions on the media, who were allowed continued access to the proceedings. *Id.* at 226-28. Thus, we found "none of the evils of closed trials" were implicated. *Id.* at 228.

¶ 35     We agree with the State and find no reason to deviate from our analysis in *Falaster*. Like *Falaster*, section 115-11 is applicable to the facts of this case. Analogous here, the trial court did not "close" the trial itself. Instead, the court exercised its discretion and ordered the temporary removal of spectators from the courtroom during M.L.'s testimony pursuant to the statute. The record is clear the media was not excluded, and spectators were only temporarily excluded during M.L.'s first round of testimony. While the removal of spectators here was referred to as a closure, the removal of spectators was just that—a removal of spectators pursuant to section 115-11.

¶ 36     Additionally, the record does not reflect that the persons excluded were immediate family members or otherwise interested parties. While defense counsel may have brought the presence of "family members" to the attention of the trial court, the record is devoid of any clear indication that such family members were immediate family members or that any family members were in fact excluded. Instead, the record is clear the court was amenable to requests of allowing additional family members to remain during M.L.'s testimony to include her grandmother and stepfather. Further, when the court inquired as to the unidentified remaining spectators, the record does not reflect that defense counsel—or the spectators—identified those persons as family members, much less immediate family members or otherwise interested parties, despite the court having read the statute and its limitations almost verbatim in open court. We will not postulate that those unidentified spectators were the family members that defense counsel previously referenced, nor will we presume the unidentified spectators had a direct interest in the case.

¶ 37     We now turn to whether it was error for the trial court to forgo making express findings regarding the direct interests of each spectator removed from the courtroom during M.L.'s testimony. The appellate court held:

"The [trial] court's failure to make any inquiry indicates that it did not make an informed decision as to whether the family members brought to its attention had a direct interest in the proceedings prior to excluding them. Such action amounted to a blanket exclusion of anyone other than members of M.L.'s family and the media and constituted a violation of statutory requirements." 2019 IL App (4th) 160882, ¶ 29.

We disagree.

¶ 38    The parties and appellate court seem to assume (1) the individuals excluded were in fact the family members defense counsel previously referenced and (2) the objection noted by the trial court was (a) in fact made and (b) an objection to the closure pursuant to section 115-11. The record does not reflect either contention, nor will this court speculate or otherwise read objections into the record. We also do not agree with the appellate majority that the trial court made no inquiry. To the contrary, the record reflects the court acknowledged the remaining spectators and inquired as to their identity, to which the record reflects no response by either party, much less an objection by defense counsel:

> "THE COURT: Who is in the back of the courtroom? Who is the gentleman sitting there? And then the rest of the people on this side. All right. As soon as we get done with her testimony, I will bring the rest of the people in the courtroom."

¶ 39    Whether a trial court must make an express determination to support its "informed decision" as to whether excluded spectators had a direct interest in the case is a question of statutory construction. In construing a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). We look to the plain statutory language and will not depart from the language by "reading into it exceptions, limitations, or conditions." *Id.*

¶ 40    The plain language of section 115-11 is clear the trial court need only formulate an opinion as to whether the spectators being excluded have a direct interest in the case. See 725 ILCS 5/115-11 (West 2014). The determination as to whether a direct interest exists is left to the discretion of the court. See *id.*; see also *Sebby*, 2017 IL 119445, ¶ 48. Contrary to defendant's position and the appellate court's contention, nothing in the statute requires an express finding to be made. Further, "the trial

court is presumed to know the law and apply it properly." *People v. Howery*, 178 Ill. 2d 1, 32 (1997); see also *People v. Smith*, 176 Ill. 2d 217, 260 (1997); *In re N.B.*, 191 Ill. 2d 338, 345 (2000). Therefore, we cannot presume or speculate that the court, in excluding the remaining yet-unidentified spectators, did so without formulating an opinion in compliance with the statute. Thus, we find the court did not violate section 115-11.

¶ 41 This court has held section 115-11 to be constitutional and exclusionary orders to be valid where the order meets the requirements of the statute. See *Falaster*, 173 Ill. 2d at 228. Because section 115-11 is constitutional and having found the trial court comported with the requirements and limitations of section 115-11, we find no clear or obvious error here.

¶ 42 Having found no clear or obvious error as it pertains to the application of section 115-11, we now turn to whether there was clear or obvious error pertaining to defendant's sixth amendment right to a public trial.

¶ 43 A criminal defendant is guaranteed the right to a public trial under the sixth amendment. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The United States Supreme Court has recognized the right to a public trial is " ' " 'for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.' " ' " *Waller*, 467 U.S. at 46 (quoting *Gannet Co. v. DePasquale*, 443 U.S. 368, 380 (1979), quoting *In re Oliver*, 333 U.S. 257, 270 n.25 (1948), quoting 1 Thomas M. Cooley, A Treatise on the Constitutional Limitations 647 (8th ed. 1927)). The right to a public trial also encourages witnesses to come forward and discourages perjury. *Id.* Further, "trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (*per curiam*).

¶ 44 Closure of a trial or courtroom is not entirely prohibited, nor does every closure violate the sixth amendment, as the right of access to criminal trials is not absolute. See *People v. Holveck*, 141 Ill. 2d 84, 100 (1990). The United States Supreme Court recognized the

"party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48 (citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984)).

Ultimately, the central aim of a criminal proceeding is to fairly try the accused. *Id.* at 46.

¶ 45       This court has clearly held that the stringent limitations prescribed by the United States Supreme Court only apply in instances in which the press and public are barred from judicial proceedings. See *Falaster*, 173 Ill. 2d at 228. That is not the case before this court. Here, neither the press nor public was barred from the judicial proceedings, as the trial court invoked section 115-11, which expressly prohibits the exclusion of the media from the courtroom. See 725 ILCS 5/115-11 (West 2014); see also *Holveck*, 141 Ill. 2d at 102-03 (stating the trial court properly invoked section 115-11, which does not violate the constitution).

¶ 46       It is well settled that the presence of the media preserves a defendant's right to a public trial as well as the fundamental protections afforded by that right. The media is "in effect, the presence of the public." *Holveck*, 141 Ill. 2d at 101. By allowing the media to attend, a trial court preserves a defendant's right to a public trial. *Id.*; see also *Falaster*, 173 Ill. 2d at 227.

¶ 47       Here, the courtroom remained opened to the media pursuant to section 115-11. Where the statute applies and the statutory requirements are met, the trial court's order does not need to meet "the more stringent limitations established by the United States Supreme Court for the closure of judicial proceedings to the press and public" because the media is allowed to remain and the media *is* the public. *Id.* at 226-27. Ultimately, it cannot be said that the temporary closure during a minor victim's testimony in this case with the media allowed to remain somehow resulted in a trial behind closed doors, deprived defendant of the protections encompassed by the sixth amendment's right to a public trial, or otherwise subjected him to the evils of closed trials. See *id.* at 228. Further, the statute was narrowly invoked, and the closure was limited, as further evidenced by the courtroom remaining open while other witnesses testified as well as when M.L. testified a second time.

¶ 48        Having found no clear or obvious error—neither under section 115-11 nor the sixth amendment—our inquiry under the plain error doctrine ends here.

¶ 49                                    *Cross-Relief*

¶ 50        In defendant's request for cross-relief, he argues (1) his trial counsel was ineffective and (2) the trial court abused its discretion during sentencing.

¶ 51        Having found second-prong plain error requiring reversal, the appellate court found it unnecessary to address the remaining claims of error pertaining to ineffective assistance of counsel and an abuse of the trial court's discretion during sentencing. 2019 IL App (4th) 160882, ¶ 45.

¶ 52        Having found no error as it pertains to section 115-11 or defendant's sixth amendment right to a public trial, however, we do not reach the issues presented for cross-relief and remand to the appellate court to address the remaining claims of error.

¶ 53                                    CONCLUSION

¶ 54        For the foregoing reasons, we find the trial court did not violate section 115-11 of the Code, nor did it violate defendant's sixth amendment right to a public trial when it effectuated a partial and temporary closure of a courtroom during a minor sex victim's testimony pursuant to section 115-11. The judgment of the appellate court is reversed, and we remand the cause to the appellate court for further proceedings.

¶ 55        Appellate court judgment reversed.

¶ 56        Cause remanded.

¶ 57        JUSTICE NEVILLE, dissenting:

¶ 58        The trial judge excluded public spectators from a portion of the defendant's trial without asking the excluded spectators about their interest in the case. The majority

shifts the burden of protecting the right to a public trial from the trial court to the defendant. The trial judge violated the defendant's sixth amendment right and the public's first amendment right to a public trial. Accordingly, I respectfully dissent.

¶ 59                     I. The Defendant's Right to a Public Trial

¶ 60                     A. The Trial Judge Abused His Discretion

¶ 61    The trial judge exercised discretion under section 115-11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-11 (West 2014)) to restrict public access to the courtroom during M.L.'s testimony. Section 115-11 permitted the judge to "exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." *Id.* "[A] trial court acting pursuant to section 115-11 may properly exclude *** only those spectators whose connection to the case *** is tenuous or whose presence simply reflects their curiosity about the *** proceedings," but "a direct interest is more likely to exist if a spectator's interest is predicated on a relationship with the defendant predating the commencement of the proceedings." (Internal quotation marks omitted.) *People v. Revelo*, 286 Ill. App. 3d 258, 265 (1996). The defendant's immediate family members have a direct interest in the case. *People v. Radford*, 2020 IL 123975, ¶ 34.

¶ 62    Section 115-11 requires a trial judge to form an opinion about the interests of spectators before excluding them from the courtroom. 725 ILCS 5/115-11 (West 2014). The judge's opinion, like an expert's opinion, "is only as valid as the bases and reasons for that opinion." *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 151 (1999). The judge's opinion, like an expert opinion, "cannot be based on mere conjecture and guess." *Damron v. Micor Distributing, Ltd.*, 276 Ill. App. 3d 901, 907 (1995) (citing *Dyback v. Weber*, 114 Ill. 2d 232, 244-45 (1986)).

¶ 63    We review the decision to exclude spectators for abuse of discretion. *People v. Holveck*, 141 Ill. 2d 84, 102-03 (1990). This court "must look to the criteria on which the trial court should rely to determine if the trial court abused its discretion." (Internal quotation marks omitted.) *People v. Ortega*, 209 Ill. 2d 354, 360 (2004). A trial court abuses its discretion "if it fails to apply the proper criteria when it weighs the facts." *Id.* When we review the trial judge's exercise of discretion, we

"must consider *** the legal adequacy of the way the trial court reached its result." *Id.*

¶ 64 The statute establishes a single criterion for determining whether the trial judge may exclude spectators from the courtroom during the testimony of a minor in a prosecution for sex offenses committed against that minor. 725 ILCS 5/115-11 (West 2014). Section 115-11 directs the trial judge to form an opinion as to whether the spectators have a direct interest in the case, and the section permits the exclusion of only those who have no such interest. *Id.*

¶ 65 The trial judge here heard no evidence or assertions about the interests of the spectators, apart from defense counsel's statement that the spectators included members of the defendant's family. The trial judge had no adequate basis to form an opinion about the interests of the excluded members of the public. I would hold the trial judge violated section 115-11 and abused his discretion by failing to inquire sufficiently to form an informed opinion about the interests of the spectators before excluding them from the courtroom.

¶ 66 B. The Majority's Reliance on *Falaster* Is Misplaced

¶ 67 The majority relies on *People v. Falaster*, 173 Ill. 2d 220 (1996), as authorizing the court's decision here. But the trial judge in *Falaster*, unlike the trial judge here, knew about the interests of the spectators excluded from the court:

"The persons excluded from the courtroom by the judge's order were two nephews of the defendant and the grandfather of one of the nephews. ***

* * *

*** The persons who were temporarily excluded from the proceedings were not members of the defendant's immediate family and thus did not have a direct interest in the outcome of the case." *Id.* at 225, 228.

¶ 68 *Falaster* stands for the proposition that a judge does not violate section 115-11 if the judge excludes spectators from a limited part of the trial if the judge first learns, before the exclusion, that the spectators do not include members of the defendant's immediate family or others with a direct interest in the case. See 725

- 15 -

ILCS 5/115-11 (West 2014). *Falaster* does not authorize a court to exclude spectators without an inquiry into their interest in the case. *Falaster*, 173 Ill. 2d at 225-30; 725 ILCS 5/115-11 (West 2014). Therefore, an exclusion order is only valid if the trial judge fully complies with section 115-11's requirements. *Falaster*, 173 Ill. 2d at 228; 725 ILCS 5/115-11 (West 2014).

¶ 69
## C. The Majority Shifts the Burden From the Trial Court to the Defendant to Protect the Right to a Public Trial

¶ 70 The majority defends the trial judge's decision here on grounds that defense counsel did not identify any excluded spectators as members of the defendant's immediate family or as otherwise interested parties. See *supra* ¶ 35. This reasoning shifts the burden of protecting the right to a public trial onto the defendant. According to the American Bar Association, "The trial judge has the responsibility for safeguarding *** the interests of the public in the administration of criminal justice." ABA Standards for Criminal Justice—Special Functions of the Trial Judge § 6-1.1(a) (3d ed. 2000). The majority provides no adequate grounds for shifting the responsibility for protecting the right to a public trial from the court onto the defendant.

¶ 71 The trial judge's exclusion of spectators here, without any basis for forming an opinion of their interest in the case—without even asking whether the defendant's family in the courtroom included members of the defendant's immediate family—constitutes structural error requiring reversal. This court, in *People v. Thompson*, 238 Ill. 2d 598, 608-09 (2010), recognized "denial of a public trial" as structural error. See *Weaver v. Massachusetts*, 582 U.S. ___, ___,137 S. Ct. 1899, 1910 (2017) (explaining structural error in denial of public trial).

> "[A] defendant need not prove specific prejudice when a trial court excludes persons with a direct interest in the proceeding. *** It would be difficult, if not impossible, *** to prove, or the State to disprove, prejudice. However, if section 115-11 is to confer anything beyond a meaningless right without a remedy, defendants must conclusively be presumed to be prejudiced by a section 115-11 violation." *Revelo*, 286 Ill. App. 3d at 267.

Accordingly, I would find the trial judge violated the defendant's sixth amendment right to a public trial and committed plain error requiring reversal when he excluded spectators from the courtroom without inquiring into their interest in the proceedings.

¶ 72                    II. The Public's Right to a Public Trial

¶ 73             A. The Public Has a First Amendment Right to a Public Trial

¶ 74        The public has a first amendment right to a public trial that is independent from the press's first amendment right to a public trial. *Weaver*, 582 U.S. at ___, 137 S. Ct. at 1910. The presence of the media is not an adequate substitute for the presence of the public. See *Radford*, 2020 IL 123975, ¶¶ 110-12 (Neville, J., dissenting).

¶ 75        As I noted in *Radford*, courtroom audience members differ from the press because audience members are not " 'attracted to the courthouse by famous or newsworthy stories in the way that the institutional press is.' " *Id.* ¶ 112 (quoting Jocelyn Simonson, *The Criminal Court Audience in a Post-Trial World*, 127 Harv. L. Rev. 2173, 2190 (2014)). " 'Instead, audience members arrive at their local courthouse because of actual events in their communities that have affected them or their loved ones.' " *Id.* (quoting Simonson, *supra*, at 2190). The public has an important and distinct identity and role in the criminal justice system. See *id.* ¶ 109. " 'When community members gain access to a nontrial courtroom, their presence in court does not just affect the case that they are there to see. The effect of their presence in the courtroom can be to change the nature of the nontrial proceedings as well.' " *Id.* (quoting Simonson, *supra*, at 2182).

¶ 76              B. The Trial Judge Has Responsibility to the Press
                                But Also to the Public

¶ 77        Because the public spectators had an independent first amendment right to be present at defendant's trial, the trial judge had a responsibility under section 115-11 not only to the press but also to the public spectators to inquire as to their interest in attending the trial so the trial judge could form an informed opinion as to whether they had a direct interest in the case before excluding them. ABA Standards for

Criminal Justice—Special Functions of the Trial Judge § 6-1.1(a) (3d ed. 2000). Moreover, a commentator has asserted that the trial judge should act as the great equalizer in criminal trials: "The trial judge's role in safeguarding the rights of the accused and the interests of the public is not simply a professional duty, but an ethical obligation." Mary Sue Backus, *The Adversary System Is Dead; Long Live the Adversary System: The Trial Judge as the Great Equalizer in Criminal Trials*, 2008 Mich. St. L. Rev. 945, 951 (2008).

¶ 78 By failing to ask the public spectators about their interests in the case, the trial judge committed structural error and violated his statutory duty to form an informed opinion about those interests before excluding members of the public from the trial. By shifting the burden to the defense to identify members of the public with a direct interest in the case, the majority improperly shifts from the trial judge to the defendant the burden of protecting the interests of the public in public trials. I would reverse because the trial judge also violated the public's first amendment right to a public trial.

¶ 79 III. Conclusion

¶ 80 The trial court violated the defendant's sixth amendment right and the public's first amendment right to a public trial in its implementation of section 115-11 (1) by failing to ask public spectators about their interests in the case and (2) by failing to form an informed opinion about those interests before excluding members of the public from the trial. This court should not create excuses when the trial judge deprives the defendant and the public of their constitutional right to a public trial. I cannot join the majority's opinion, which ignores the right to a public trial. Therefore, I respectfully dissent.