NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230291-U

NO. 4-23-0291

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 20, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Mercer County |
| ANTONIO CORTEZ WILLIAMSON, | ) | No. 19CF66 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Norma Kauzlarich, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction was reversed and the case remanded for a new trial where
the trial court denied defendant his constitutional right to a public trial by excluding
all spectators from the courtroom without conducting the required constitutional
analysis.

¶ 2     Defendant Antonio Cortez Williamson was convicted after a bench trial of three
counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and
sentenced to three consecutive terms of 15 years in the Illinois Department of Corrections. During
the testimony of Mercer County Sheriff's Deputy Anthony Baugh, the State played a 33-minute
video of Baugh's interview of the minor victim the day after defendant was alleged to have
committed the charged offenses. The trial court, evidently believing it was compelled to close the
courtroom under section 115-11 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/115-11 (West 2022)), directed everyone to exit the courtroom except defendant, the attorneys, Baugh, and court personnel. The court reopened the courtroom after the video was played.

¶ 3        Defendant argues that the trial court denied him his constitutional right to a public trial because (1) section 115-11 did not authorize the court to close the courtroom while the video was being played and (2) the court failed to conduct the strict constitutional analysis the United States Supreme Court has required courts to conduct before excluding the public from a criminal trial. *Presley v. Georgia*, 558 U.S. 209, 214 (2010) (*per curiam*). We agree. Because this error was adequately raised at trial and falls within the narrow class of errors for which automatic reversal is constitutionally required, we reverse and remand for a new trial.

¶ 4                                    I. BACKGROUND

¶ 5        We need not recount the facts of this case in detail because the issues addressed in this decision are narrow.

¶ 6        On August 28, 2019, defendant was alleged to have committed three acts of sexual assault against his girlfriend's daughter K.C., then age nine. The following day, defendant was arrested and charged with three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)). K.C. was taken to the Aledo Crisis Center, where she was interviewed by Baugh. The interview was recorded on video.

¶ 7        The trial court granted the State's motion to introduce the video into evidence and held a bench trial beginning in February 2022. The video was introduced into evidence as follows:

        "THE COURT: We're back on the record.

        I think we were at the point of Ms. Simpson playing the People's Exhibit No. 1, correct?

- 2 -

MS. SIMPSON [(ASSISTANT STATE'S ATTORNEY)]: Yes, Your Honor. This will elicit statements by the minor. I would make a motion to exclude at this time.

THE COURT: Okay. Mr. Larson?

MR. LARSON [(DEFENSE ATTORNEY)]: Your Honor, it is an open and public courtroom, but I realize there are Supreme Court Rules regarding testimony of witnesses and it does seem to me that this is not testimony of the young lady, but—

THE COURT: She's a minor.

MR. LARSON:—it is her statements.

THE COURT: It's her statements, so at this time, I need to clear the courtroom, please.

MR. LARSON: If we could make a record, Your Honor, once it's cleared, please, of who is present for the record.

(Spectators vacated the courtroom.)

THE COURT: We will.

So all the spectators or whoever was in the back of the courtroom were asked to leave because we are going to play the minor child's statements during a Child Advocacy Center interview.

In the courtroom is the deputy that has custody of the evidence and is sitting with the evidence. Q, my bailiff, is here. Ms. Simpson, [defendant], Mr. Larson. The officer that accompanies [defendant] is here. My clerk, my court reporter, and Investigator Baugh that is still sitting up on the witness stand, and myself.

MR. LARSON: Thank you.

THE COURT: Uh-huh.

(Video playing.)

MS. SIMPSON: And I just have a few—

THE COURT: We need to let—the people can come back in, if you want to shut that off."

¶ 8        After Baugh's testimony, the courtroom was again closed, and K.C. took the stand herself. Her testimony was brief and consistent with her statements to Baugh. Although the State attempted to introduce DNA evidence linking defendant to the offense, the State could not establish the chain of custody with admissible evidence and ultimately proved only that male DNA and sperm cells were present on K.C.'s body.

¶ 9        After concluding the trial in April 2022, the trial court found defendant guilty on all three counts, explaining its reasoning as follows:

"[THE COURT]: What this comes down to, once upon a time we didn't have DNA. We didn't have scientific measures. It comes down to credibility of a now-12-year-old child, and the Court finds that she is credible. She's been consistent from the initial report all the way through trial. She has bravely, the Court considers, testified at least two hearings here with the motion hearing and the trial hearing. And the Court notes that there were two younger boys, her brothers, in the house and the only other person in the house was [defendant].

***

The credibility of this child surpasses everything. The fact that there was male DNA found consistent what she's been telling from the beginning only further

- 4 -

bolsters—as much as I hate that word—her credibility. For those reasons, the Court is going to find that the State has met their burden of proof and find [defendant] guilty.”

¶ 10       The trial court sentenced defendant to three consecutive terms of 15 years' imprisonment. Defendant failed to file a posttrial motion, and the court denied defendant's motion for reconsideration of his sentence.

¶ 11       This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13       A criminal defendant's right to a public trial is guaranteed by the sixth amendment of the United States Constitution. U.S. Const., amend. VI; accord Ill. Const. 1970, art. I, § 8. The right has ancient roots and exists "for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." (Internal quotation marks omitted.) *Waller v. Georgia*, 467 U.S. 39, 46 (1984); see *In re Oliver*, 333 U.S. 257, 266-70 (1948) (discussing the history of the public-trial right).

¶ 14       In deciding this case, we take significant guidance from the supreme court's recent discussions of the public-trial right and explain why the circumstances of this case compel reversal as opposed to affirmance. See generally *People v. Radford*, 2020 IL 123975; *People v. Schoonover*, 2021 IL 124832. Our standard of review of the constitutional and statutory questions presented in this case is *de novo*. *Schoonover*, 2012 IL 124832, ¶ 19.

¶ 15                          A. Preservation of the Issue

¶ 16       The parties dispute whether defendant properly preserved this issue for appeal by raising it in (1) a contemporaneous objection at trial and (2) a written posttrial motion. See *People*

*v. Sebby*, 2017 IL 119445, ¶ 48 ("To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion. [Citation.] Failure to do either results in forfeiture."). We address each component separately.

¶ 17                                     1. *Contemporaneous Objection*

¶ 18        The supreme court has stressed that "[a] contemporaneous objection is particularly crucial when challenging any courtroom closure." *Radford*, 2020 IL 123975, ¶ 37. Defendant argues that his objection at trial was sufficient; the State responds that defendant failed to object to the procedure followed and in fact acquiesced to the closure of the courtroom. Defendant has the better of this argument.

¶ 19        Before the courtroom was closed, defendant's counsel asserted that the courtroom was open and public and that the State was introducing only K.C.'s *statements*, not her *testimony*. The trial court interrupted this assertion to state that "[s]he's a minor" and immediately ruled that it "need[ed] to clear the courtroom" because the video included "her statements." This objection and ruling addressed the precise argument we discuss below. See *In re Estate of Mercier*, 2011 IL App (4th) 110205, ¶ 16 (noting that objections must be timely and must rest on the same basis as the objecting party's argument on appeal).

¶ 20        On the question of acquiescence, the only procedure followed here was that the trial court asked the spectators to leave the courtroom and they left; defendant did not acquiesce by failing to physically prevent them from leaving after the court asked them to leave. Instead, defendant's counsel ensured that the record reflected the exclusion of all spectators. This stands in significant contrast to a case in which this court found acquiescence because "the trial judge asked defense counsel, 'Are you satisfied in [the defendant's] right to a public trial?' " and "[d]efense counsel responded 'Yes, Judge.' " *People v. Webb*, 267 Ill. App. 3d 954, 956 (1994). To the extent

the State is arguing that defendant acquiesced by failing to propose a procedure less drastic than total closure of the courtroom, he was not required to do so, as we explain below.

¶ 21        In short, this is a case where defendant contemporaneously attempted to assert his right to a public trial and has not merely "raise[d] an abstract [public-trial] claim only as an afterthought on appeal." *Levine v. United States*, 362 U.S. 610, 620 (1960). In this respect, we distinguish the present case from those in which reviewing courts have found forfeiture of a public-trial claim due to the defendant's failure to raise a contemporaneous objection at trial. See *id.* at 619; *Schoonover*, 2021 IL 124832, ¶ 23; *Radford*, 2020 IL 123975, ¶ 22.

¶ 22                              2. *Posttrial Motion*

¶ 23        Defendant concedes that he did not raise his public-trial claim in a written posttrial motion as required by section 116-1 of the Code (725 ILCS 5/116-1 (West 2022)). The supreme court addressed this statutory requirement at length in *People v. Enoch*, 122 Ill. 2d 176 (1988). There, the court explained that a defendant's failure to raise an issue in a posttrial motion ordinarily results in forfeiture of that issue on appeal, with three exceptions: "constitutional issues which have properly been raised at trial and which can be raised later in a post-conviction hearing petition [citation], sufficiency of the evidence, and plain error." *Id.* at 190; see 725 ILCS 5/122-1(a)(1) (West 2022) (providing that a defendant may obtain postconviction relief if "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both"); see also *People v. Cregan*, 2014 IL 113600, ¶ 19 (explaining that *Enoch*'s three exceptions apply to noncapital cases as well as capital cases). The constitutional-issue exception arises from the fact that "[i]f a defendant were precluded from raising a constitutional issue previously raised at trial on direct appeal, merely

- 7 -

because he failed to raise it in a posttrial motion, the defendant could simply allege the issue in a later postconviction petition." *Id.* ¶ 18.

¶ 24 Although the supreme court has generally treated the contemporaneous objection requirement and the posttrial motion as equivalent, in that a "[f]ailure to do either results in forfeiture" (*Sebby*, 2017 IL 119445, ¶ 48), it has also stressed that "constitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture on direct appeal under *Enoch*" (emphasis in original) (*People v. Almond*, 2015 IL 113817, ¶ 54). This court reconciled these holdings by concluding that "*Almond* says what it says: addressing the issue on direct appeal is conditional on whether the issue was raised at trial." *People v. Shafer*, 2020 IL App (4th) 180343, ¶ 59.

¶ 25 Defendant argues that his public-trial claim is not forfeited because it falls under *Enoch*'s constitutional-issue exception. Public-trial claims have indeed been adjudicated, albeit infrequently, in postconviction proceedings. See, *e.g.*, *People v. Dampher*, 28 Ill. 2d 136, 137 (1963); *People v. Hayden*, 338 Ill. App. 3d 298, 306 (2003). This court has therefore applied *Enoch*'s constitutional-issue exception to public-trial claims in other cases. See *People v. Taylor*, 244 Ill. App. 3d 460, 462-63 (1993) (citing *Enoch*, 122 Ill. 2d at 190-91); *People v. Falaster*, 273 Ill. App. 3d 694, 697 (1995) (*Falaster I*), *aff'd*, 173 Ill. 2d 220 (1996) (*Falaster II*).

¶ 26 However, the supreme court did not mention the constitutional-issue exception when affirming this court's decision in *Falaster I*; instead, the supreme court addressed the merits of the defendant's public-trial claim "given the general importance of the question and the division of appellate court authority on the subject." *Falaster II*, 173 Ill. 2d at 226. *Schoonover* and *Radford* likewise did not mention the constitutional-issue exception when discussing forfeiture, but the defendants in those cases failed to raise the public-trial issue not just in a posttrial motion, but at

trial as well; this mandated plain-error review. *Schoonover*, 2021 IL 124832, ¶ 23; *Radford*, 2020 IL 123975, ¶ 22; see *Enoch*, 122 Ill. 2d at 190-91 (distinguishing between the constitutional-issue exception and plain error). Therefore, while the supreme court has never explicitly applied the constitutional-issue exception to a public-trial claim, it has also never distinguished public-trial claims from other constitutional issues that can be addressed under *Enoch*, which remains good law, as recognized in *Almond*. Accordingly, we adhere to the approach taken in *Taylor* and *Falaster I* and find that defendant did not forfeit his public-trial claim. See also *Weaver v. Massachusetts*, 582 U.S. 286, 302 (2017) ("[T]he factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays.").

¶ 27                                    B. Statutory Analysis

¶ 28          The constitutional right to a public trial is satisfied if the trial court fully complies with section 115-11 of the Code, which provides that in cases such as this one,

> "where the alleged victim of the offense was a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." 725 ILCS 5/115-11 (West 2022).

See *Falaster II*, 173 Ill. 2d at 228 (upholding an exclusion order as constitutional when the trial court fully complied with section 115-11).

¶ 29          We note that section 115-11 has since been amended to state that "[t]he court shall enter its finding that particular parties are disinterested and the basis for that finding into the record." Pub. Act 102-994 (eff. May 27, 2022). However, we are bound by the supreme court's interpretation of the statute in effect at the February 2022 trial, and the supreme court held in

*Schoonover*, 2021 IL 124832, ¶ 40, that while the trial court must formulate an opinion as to whether spectators have a direct interest in the case, "nothing in the statute require[d] an express finding to be made." See *Doyle v. Hood*, 2018 IL App (2d) 171041, ¶ 35 (noting that the supreme court's interpretation of a statute binds this court).

¶ 30    The trial court evidently believed it was complying with section 115-11 when it excluded all spectators from the courtroom while the victim's recorded statements were being played. However, our construction of this statute is *de novo*, meaning we do not owe any deference to the trial court's interpretation (see *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 17), nor are we bound by the State's concession that the trial court violated the statute (see *Pasic v. Department of Financial & Professional Regulation*, 2022 IL App (1st) 220076, ¶ 36).

¶ 31    "In construing a statute, our primary goal is to ascertain and give effect to the intent of the legislature. [Citation.] We look to the plain statutory language and will not depart from the language by 'reading into it exceptions, limitations, or conditions.' " *Schoonover*, 2021 IL 124832, ¶ 39 (quoting *People v. Roberts*, 214 Ill. 2d 106, 116 (2005)). We also presume that statutes " 'use[ ] familiar legal expressions in their familiar legal sense.' " *People v. Bailey*, 232 Ill. 2d 285, 290 (2009) (quoting *Henry v. United States*, 251 U.S. 393, 395 (1920)).

¶ 32    Here, the statute's plain language allows for the exclusion of spectators "while the victim is testifying." The trial court deviated from this language by excluding spectators while *Baugh* was testifying, simply because the victim's recorded *statement* was being played at that time. Furthermore, the exclusion of spectators in February 2022 obviously did not take place while K.C. was *making* her 2019 statement. *Cf.* 725 ILCS 5/106B-5(a) (West 2022) (allowing child victims to contemporaneously testify by closed circuit television from outside the courtroom). To find compliance with section 115-11, we would have to interpret "while the victim is testifying"

as including "while a video including the victim's previously recorded out-of-court statements is being played for the trier of fact." This interpretation goes far beyond the plain language of the statute given the familiar legal sense of the word "testifying," which does not include the introduction of audiovisual recordings or other out-of-court statements. See, *e.g.*, Ill. R. Evid. 1001(1)-(2) (eff. Jan. 1, 2011) (defining "recordings" and "photographs"); Ill. R. Evid. 801(a) (eff. Oct. 15, 2015) (defining "statement"). The purpose of the statute is to avoid "the effects on a young child of testifying while a large number of people [a]re in the courtroom" (*People v. Holveck*, 141 Ill. 2d 84, 100 (1990)); this concern does not apply when the people in the courtroom are merely watching the child's recorded out-of-court statements.

¶ 33        As for the trial court's assertion that it needed to clear the courtroom, the plain statutory language does not authorize, much less require, the clearing of the courtroom; the court may exclude only those persons who lack a direct interest in the case and are not members of the media. See *Falaster II*, 173 Ill. 2d at 227 (distinguishing between the discretionary exclusion of spectators under section 115-11 and the closure of judicial proceedings to the press and public). Unlike in *Schoonover*, 2021 IL 124832, ¶ 35, the record does not affirmatively show that the media was allowed to remain in the courtroom. Furthermore, while the court was not required to make an express finding that the excluded spectators lacked a direct interest in the case, the record affirmatively shows that it did not formulate such an opinion because it simply referred to them as "spectators or whoever" after excluding them. *Contra id.* ¶ 40 (presuming from a silent record that the trial court formulated an opinion).

¶ 34        Defendant raises a number of other interpretive arguments, but we need go no further than the plain language of section 115-11 to conclude that the trial court failed to comply.

¶ 35                        C. Constitutional Analysis

¶ 36　　　　Because the trial court's exclusion of the public did not comply with section 115-11, the court was required to comply with "the stringent limitations prescribed by the United States Supreme Court." *Id.* ¶ 45 (citing *Falaster II*, 173 Ill. 2d at 228). Under this standard, "[w]hile criminal trials that are closed to the public are strongly disfavored, they are not forbidden." *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004). However, the court's authority is carefully circumscribed:

> "A party seeking to bar the court's doors to the public must satisfy a four-part test: (1) the party who wishes to close the proceedings must show an overriding interest which is likely to be prejudiced by a public trial, (2) the closure must be narrowly tailored to protect that interest, (3) alternatives to closure must be considered by the trial court, and (4) the court must make findings sufficient to support the closure." *Id.* (citing *Waller*, 467 U.S. at 48).

Importantly, "trial courts are required to consider alternatives to closure *even when they are not offered by the parties*." (Emphasis added.) *Presley*, 558 U.S. at 214.

¶ 37　　　　Here, the trial court did not conduct this analysis, nor is the existing record sufficient for us to infer that "the trial judge balanced the interests and factors in the case." *Holveck*, 141 Ill. 2d at 100. Indeed, instead of balancing the appropriate factors to determine whether it *should* close the courtroom, the court believed it had no choice but to do so. We specifically note that the State's strong interest in protecting the victim from the traumatic experience of publicly testifying was not present when the court excluded the public from viewing her recorded statements. See *id.* at 100-01; *cf. Maryland v. Craig*, 497 U.S. 836, 857 (1990) (holding that the defendant's constitutional right to confront witnesses face-to-face may give way "where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence

- 12 -

of the defendant"). We express no opinion as to whether some other overriding interest may be relevant on remand, but even in the face of such an interest, the trial court's broad and general finding that "[i]t's her statements, so at this time, I need to clear the courtroom" would not be a constitutionally adequate analysis. *Waller*, 467 U.S. at 48. As such, we find that the trial court erroneously denied defendant his right to a public trial under the sixth amendment.

¶ 38 The State argues that the trial court's error is not reversible because defendant has failed to show prejudice. However, when a public-trial claim is adequately preserved and raised on direct appeal, no showing of prejudice is necessary. Compare *id.* at 49-50 (holding that the defendant need not prove specific prejudice when public-trial claim is raised on direct appeal) with *Weaver*, 582 U.S. at 305 (holding that the defendant must show prejudice when public-trial claim is later raised in the context of an ineffective assistance of counsel claim). Moreover, we are reluctant to trivialize the impact of a 33-minute video in which the victim—the only witness to defendant's acts—recounted those acts the following day, particularly in a case where the consistency of the victim's prior statements and testimony was central to the court's finding of guilt. *Cf. Walton*, 361 F.3d at 433 (granting an Illinois defendant postconviction relief because the public was excluded from the prosecution's presentation of its entire case-in-chief).

¶ 39 Accordingly, we reverse defendant's conviction and sentence and remand for a new trial. In light of this disposition, defendant's remaining contentions of error are moot. At the new trial, the trial court will retain the discretion to exclude spectators during K.C.'s *testimony* in compliance with section 115-11 of the Code; otherwise, the court must comply with "the stringent limitations prescribed by the United States Supreme Court." *Schoonover*, 2021 IL 124832, ¶ 45.

¶ 40 It is easy to understand the trauma that might be suffered by a child victim required to testify about their abuse in front of a room full of strangers. To protect the child victim in this

circumstance, section 115-11 retreats slightly from the normal expectation that our criminal trials are open to the public. But this limited exception to the general rule of public trials cannot be pushed beyond what the statute or the constitution allows, and in these circumstances, the required consequence is clear.

¶ 41                                III. CONCLUSION

¶ 42        For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

¶ 43        Reversed and remanded.