NOTICE

Decision filed 01/25/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220448-U

NO. 5-22-0448

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 17-CF-87 |
| | ) | |
| SHELBY WESTON, | ) | Honorable |
| | ) | J. Marc Kelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1　*Held*:　The circuit court's denial of a recess was not plain error and the defendant did not demonstrate ineffective assistance of counsel for prematurely releasing a witness. The circuit court exceeded the maximum authorized term of probation for a Class 3 possession of child pornography and the order has been modified to 30 months of probation. As modified, the circuit court's sentencing decision was not excessive.

¶ 2　Following a bench trial, the defendant, Shelby Weston, was convicted of traveling to meet a minor, grooming, and two counts of child pornography. The defendant was sentenced to a total of 13 years in the Illinois Department of Corrections (IDOC), followed by 4 years of probation. On appeal, the defendant claims that the circuit court's failure to grant a recess to allow a consultation with an expert witness denied the defendant a fair trial, and, alternatively, argues that defense counsel provided ineffective assistance for prematurely dismissing the defense's expert witness. The defendant additionally claims that the circuit court's sentencing decision for Class 3

1

possession of child pornography exceeded the maximum term, and that the total sentence of 13 years in the IDOC followed by 4 years of probation was excessive. For the following reasons, we affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4     In March of 2017, the defendant, born on May 5, 1975, began interacting with G.H., born November 3, 2000, through a cell phone chat application. The defendant and G.H. exchanged phone numbers and continued to text each other directly for a couple of weeks. Then, on March 24, 2017, the defendant, who lived in Monett, Missouri, drove to Vandalia, Illinois, to surprise G.H. in person at her workplace. G.H.'s manager contacted the police, and the defendant was subsequently arrested. On March 27, 2017, the defendant was charged by information with traveling to meet a minor in violation of section 11-26(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-26(a) (West 2016)) and grooming in violation of section 11-25(a) of the Code (720 ILCS 5/11-25(a) (West 2016)).

¶ 5     The Vandalia Police Department confiscated the defendant's cell phone and discovered nude photographs of minors, including a photograph of G.H. On November 30, 2017, the State charged the defendant with an additional six counts of child pornography in violation of section 11-20.1(a)(6) of the Code (720 ILCS 5/11-20.1(a)(6) (West 2016)). Counts III through VI alleged that the defendant possessed pornographic photographs of children under the age of 13. Count VII alleged that the defendant possessed a pornographic photograph of a child under the age of 18. Count VIII alleged that the defendant possessed a pornographic photograph of G.H.

¶ 6     The circuit court set multiple trial dates and granted multiple continuances. During a status conference held on March 29, 2019, the defendant requested a continuance because his material witness, Andrew Garrett, was not prepared and was not available on the April 2, 2019, trial date.

2

The State argued against the continuance and noted that the defendant had previously confirmed that the expert witness had access to all of the discovery. The circuit court informed the parties that the defendant had been in the county jail for over two years and the court was required by the Chief Judge's Office to resolve cases before two years. Nevertheless, the circuit court granted a continuance to allow the expert witness to prepare for and appear at trial.

¶ 7    On the September 10, 2020, trial date, defense counsel requested that his expert witness, Andrew Garrett, an eDiscovery/computer forensic expert with Garrett Discovery, Inc., sit next to him at the counsel table to aid with the technical aspects of the case. The defendant filed an amended witness list, which included Garrett, on the September 10, 2020, trial date. The State objected to allowing Garrett to remain at the counsel table if he intended to testify, as witnesses had been excluded from the courtroom. The circuit court allowed Garrett to be present at the counsel table during the testimony and allowed Garrett to testify subject to any further objections by the State at the time of his testimony.

¶ 8    The State called G.H. as their first witness at this bench trial. G.H. testified that she was 16 years old in March of 2017, and she had graduated high school in 2019. G.H. testified to the chat application on her cell phone where she had contact with the defendant. G.H. testified that when talking to the defendant, "I started with my age, my sex, and my location," and had texted the defendant "16, F for female, and Illinois." The defendant responded that he was male, from Missouri, and that he was "38 or 39." G.H. testified she had deleted the chat application, some text messages, and photographs from her phone before the police confiscated her phone because she did not want her parents to find the messages.

¶ 9    G.H. testified that the chat platform, where she met the defendant, only allowed text messages, and did not allow photographs or videos. The defendant and G.H. exchanged phone

3

numbers and continued to text directly for a couple of weeks. They texted about "sexual topics," which included the possibility of meeting up to have sex. G.H. had also texted the defendant about Future Farmers of America (FFA), high school, and that she worked at McDonald's in Vandalia, Illinois. G.H. testified that they had exchanged nude photographs. The defendant specifically requested a nude photograph of G.H. "from behind," and G.H. complied.

¶ 10    The police had obtained photographs from the defendant's cell phone and G.H. identified one of the photographs to be of her vaginal area and breasts. The State displayed a photograph of G.H. to the circuit court and G.H. The photograph was included on the State's disc marked as Exhibit 2. G.H. testified that the photograph was the same photograph that she had taken and had given to the defendant.

¶ 11    G.H. additionally testified to the events that occurred on March 24, 2017. G.H. arrived at her job and received a text message from the defendant that she should "look to [her] left." G.H. was able to recognize the defendant standing in McDonald's because he had previously provided her with a photograph of his face. G.H. began to have a panic attack when she recognized him and went to the back area of the McDonald's where she worked. The defendant then sent G.H. messages saying that he had returned to a hotel located across the street, and the defendant invited her to the hotel. G.H. testified that she told him to leave.

¶ 12    G.H. testified that her coworkers noticed that G.H. was upset. G.H. informed her manager of the situation and the manager called the police. G.H. spoke to the police after they arrived at McDonald's, and she spoke to the police later that evening at the police station. She provided the police with the defendant's phone number and her cell phone.

¶ 13    On cross-examination, G.H. was questioned about whether she had asked the defendant if he would have sex with a 17-year-old girl. G.H. testified that she did not believe she would say 17

4

because she was 16 years old. G.H. did not recall the date, time, or the name of the chat application she used when she texted the defendant that she was 16 years old. She believed that she had informed the defendant of her age before sending photographs.

¶ 14    Dustin Cade, an officer with the Vandalia Police Department, testified to investigating the complaint at the Vandalia, Illinois, McDonald's on March 24, 2017. He testified that when he arrived, G.H. was crying and appeared distraught. G.H. informed the officer that she was 16 years old, she had been texting the defendant, and the defendant had traveled to Vandalia, Illinois, to meet her. The manager of McDonald's provided Cade with security camera footage of the defendant in the McDonald's lobby. Cade took photographs of G.H.'s camera which displayed a text message conversation with the defendant. Cade testified that the messages included a conversation that referenced FFA, which was a school sanctioned program for high school and junior high school children. The photographs of the conversation on G.H.'s cell phone and her cell phone were admitted into evidence. Cade additionally testified that during his interview with G.H., she informed Cade that she told the defendant her age immediately when they first started chatting.

¶ 15    Cade additionally testified that he called the defendant after speaking with G.H. The defendant was still in Vandalia and was interviewed that same day at the Vandalia Police Department. The interview was recorded and admitted into evidence. During the interview, the defendant identified G.H. as a 16-year-old. He stated that they had exchanged explicit photographs and he had deleted those photographs. Cade testified that he collected the defendant's cell phone and a receipt from the hotel located across the street from the McDonald's. Those items were admitted into evidence.

¶ 16    During Cade's testimony, defense counsel interrupted the State's examination of Cade to excuse the expert witness, Andrew Garrett. Garrett left the courthouse and did not return.

¶ 17    Randall Copsey, with the Illinois State Police, testified after the defendant released his expert witness. Copsey testified that he had connected the defendant and G.H.'s cell phones to a Cellebrite machine to extract data stored in the phones. Copsey reviewed the report to ensure that the data was properly extracted, but it was not his task to analyze the data. After Copsey testified, the State clarified with defense counsel that the defendant did not intend to call Garrett as a witness. Copsey was then excused because he was not needed to provide any potential rebuttal testimony.

¶ 18    Jerry Bowling, with the Vandalia Police Department, testified that the State police conducted the Cellebrite data extraction on the defendant's cell phone and G.H.'s cell phone. He reviewed the extraction report. Bowling testified that explicit SMS conversations between the defendant and G.H. from March 21, 2017, through March 24, 2017, were exported from the cell phones. The extraction report was admitted into evidence without objection and published to the circuit court. The conversation included a statement by the defendant that he was afraid of getting caught by the police because of their conversation.

¶ 19    Bowling was shown State's Exhibit 2, which was a disc containing five images and one video received from the Cellebrite extraction report. The photographs and video portrayed underage girls exposing their chests and/or genitals. One of the photographs was of G.H. Bowling testified that G.H. was shown the same photograph at the police department and identified herself as the person in that photograph. Exhibit 2 was admitted into evidence.

¶ 20    On cross-examination, Bowling testified that nothing in the photographs identified the specific ages of the girls. Bowling testified that it was possible for a person to have a photograph on their phone that was no longer accessible. Defense counsel asked several questions about extracting inaccessible data from cell phones. Bowling testified that he was not an expert and did not have knowledge of how a deleted file would have been identified in the Cellebrite report. He

6

also was not aware of when the photographs were last viewed. The circuit court sustained the State's objection that Bowling was not an expert witness qualified to answer questions about whether inaccessible data was on the defendant's phone.

¶ 21　On redirect, Bowling testified that he was not familiar with the Cellebrite program that created the extraction report. Bowling was shown Exhibit 9, which was a PDF of the extraction report with a deletion column. The State questioned Bowling on whether the report reflected that something had been deleted. The defense objected and argued that Bowling was barred from being asked similar questions on deleted data. The State argued that the extraction report shown to Bowling did not require expertise to read because it indicated whether a file was deleted.

¶ 22　The circuit court allowed further testimony limited to the content of the extraction report, and not to Bowling's expertise. The defense was allowed to further cross-examine the witness. Bowling was shown Exhibit 9 and testified the column labeled "deleted" was blank. Bowling did not have knowledge of how the extraction process related to the deleted column on the report.

¶ 23　After Bowling testified, the State requested permission to recall Copsey to testify for the limited purpose of explaining the meaning of a blank space in the deleted column of the extraction report. Copsey had already left but he was driving back to the courthouse. The parties discussed allowing Copsey to testify over Zoom and defense counsel agreed to have Copsey testify over Zoom. Nevertheless, the circuit court allowed time for Copsey to return to the courthouse to testify in person and the State recalled Copsey to explain the deleted column on the extraction report.

¶ 24　While the circuit court waited for the State's witness to return, the circuit court admonished the defendant of his right to testify and asked whether the defendant was going to present any witnesses. Defense counsel informed the circuit court that he was not going to present any witnesses. Defense counsel, however, requested to keep the record open to allow Garrett to testify,

7

if necessary, regarding the Cellebrite report issue. The circuit court then asked about the purpose of the expert witness testimony. Defense counsel responded:

> "I do not know what he would testify to specifically. I think, generally, he would be able to testify whether or not the column which address the deletion, whether or not that is something that's left blank if it is not deleted and/or if there was an area of the phone that my client—those pictures could have been in that did not—was not accessible to my client."

¶ 25    The circuit court found that the issue presented by defense counsel was beyond the scope of the one question that Copsey was to answer regarding the meaning of a blank deletion column on the extraction report. The circuit court additionally found that the defendant's witness was not barred from testifying to the issues raised by defense counsel, but defense counsel had elected to release his expert witness.

¶ 26    Copsey returned and testified that a "yes" marked in the deleted column meant "it was deleted and recovered by Cellebrite." A blank space in a deleted column meant "it was pulled directly from the phone."

¶ 27    On cross-examination, Copsey testified that the photographs would be accessible on the defendant's cell phone. Copsey did not access the phone to look at photographs because data could change if "apps" were opened. No one had viewed the cell phone to determine whether the photographs were accessible. Copsey was shown the extraction report and testified that the photograph of G.H. was pulled from a "message sent from one person to the other person in that MMS service." The other images pulled from the phone were located in different folders on the phone.

¶ 28    After Copsey's testimony concluded, the State rested. The defendant requested a recess to consult with his expert witness on the accessibility of photographs to determine whether his witness would provide testimony contrary to the State's witness. The State argued that the

defendant had the opportunity to have his expert sit with him and testify, but he elected to release the expert witness. The State additionally argued that the defense expert's report only addressed the charges involving G.H and did not reference the additional child pornography charges. Testimony outside of the expert report would be improper. Defense counsel responded that he was unaware of whether his expert witness would have an opinion adverse to the State's witness and acknowledged that the expert was allowed to leave.

¶ 29    The circuit court denied the motion for a recess, and stated,

> "Both the State and the defendant have had nearly three years to prepare this case for trial and any of these issues should have been resolved prior to today. An expert was here, he left, and there is no indication that this Court has that he would testify any differently than the witnesses that have been present today to this point."

¶ 30    The defendant argued a motion for directed verdict, which the circuit court denied. The defense presented no witnesses. The parties presented closing arguments. The circuit court allowed the parties seven days to file a written supplement to their closing arguments. The defendant's written closing argument focused on a speedy trial argument and did not include an argument on the contents of the Cellebrite report or whether the photographs had been deleted and were not accessible by the defendant. The defendant did not file a posttrial motion regarding the deletion of those photographs and the denial of a recess or continuance to consult with an expert witness regarding the Cellebrite data.

¶ 31    On October 1, 2020, the matter was set for the announcement of the verdict. The circuit court first addressed counts I, II, and VIII, which were related to G.H., the victim. The circuit court found that the victim was 16 years old, and the defendant was aware of her age. The conversations between the defendant and the victim were about sex. The defendant had rented a hotel room in Vandalia, he drove five hours to Vandalia, and he had invited the victim to his hotel room. The victim identified herself in a nude photograph that was located on the defendant's phone. The

9

circuit court found that the State met its burden on counts I, II, and VIII, and the defendant was found guilty on those counts.

¶ 32    The circuit court next addressed the counts with allegations of possession of child pornography. Counts III, IV, V, and VI alleged that the individuals depicted in the photographs on the defendant's phone were under the age of 13. The circuit court considered the testimony by the Illinois State Police officer, but no additional evidence was presented as to the age of the victims. Upon viewing the photographs, the circuit court found that the State did not meet its burden in proving the age of the victims. The defendant was found not guilty on counts III, IV, V, and VI.

¶ 33    The State had charged the defendant in count VII with possession of a photograph of a child under the age of 18 years old. The circuit court found that the State met its burden in count VII where the child depicted in the photograph was under the age of 18, and the defendant was found guilty on count VII.

¶ 34    At the sentencing hearing, G.H.'s mother presented an impact statement. She requested the maximum amount of time to prevent the defendant from preying on other underage victims. The State noted that G.H. was afraid to give a victim impact statement.

¶ 35    A presentence investigation (PSI) report indicated that the defendant had been convicted in Missouri for attempt enticement of a minor and attempt statutory sodomy. In 2009, the defendant was sentenced to five years for those crimes. The defendant was released from parole on October 6, 2014. The PSI included that the defendant was previously employed, had a supportive family, graduated high school, had "very little history of substance abuse," and had "very little criminal background." The PSI also contained risk factors including that the defendant was previously sentenced to the Missouri Department of Corrections, did not have a residence, and was unemployed. A statement by the defendant was attached to the PSI. The defendant wrote that he

10

understood the severity of the charges and he took responsibility for his actions. The defendant claimed that he was depressed and would work on finding better solutions to his depression.

¶ 36    The State argued factors in aggravation pursuant to section 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2 (West 2020)), including that the defendant's conduct caused or threatened serious harm and that the defendant had a history of prior delinquency or criminal activity. The State requested consecutive sentences, including five years in the IDOC for count I, a consecutive three-year sentence on count II, a consecutive five-year sentence on count VII, and a mandatory consecutive four years of probation, a Class 3 felony offense of child pornography, on count VIII. The State additionally requested a $1000 fine on both counts VII and VIII, mandatory assessments on all cases, and DNA testing.

¶ 37    The defendant waived a statement of allocution and argued factors in mitigation under section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2020)). He argued that the defendant's criminal conduct was not a result of circumstances likely to occur again, his character and actions indicated that he was unlikely to commit another similar crime, and that the defendant was likely to comply with the terms of a period of probation.

¶ 38    The circuit court found that it had considered the factors in aggravation and mitigation, the victim impact panel, the PSI report, the cost of incarceration, and arguments by the State and defense counsel. The circuit court referred to the four counts where the State had not met its burden and stated that it would not consider those counts as factors. The circuit court explained that it found that there was nothing in the evidence that identified the actual age of the children but considered that its decision did not mean that the defendant did not have possession of those photographs.

11

¶ 39 The circuit court found that it was unable to accept the arguments presented in mitigation where the defendant had not shown that the conduct was unlikely to recur where the defendant had previously committed a similar offense. The court found two factors in aggravation—that the defendant had a history of prior delinquency and his conduct had caused or threatened serious harm to G.H. The circuit court stated, "it is my opinion that consecutive sentences are required to protect the public from further criminal conduct by the defendant."

¶ 40 The circuit court sentenced the defendant to five years in the IDOC on count I. On count II, the defendant was sentenced to three years in the IDOC, to be served consecutively to count I. On count VII, the defendant was sentenced to five years in the IDOC, to be served consecutively to count II. On count VIII, the defendant was sentenced to four years of probation, to be served consecutively to the sentence in count VII. The defendant was additionally ordered to pay a fine of $1000 on counts VII and VIII, ordered to pay the mandatory assessments, and required to submit to DNA testing, as well as probation service fees. The defendant was ordered to have no contact with the named victim. The defendant was also subject to a two-year mandatory supervised release period. The circuit court additionally announced that the actual time that the defendant would spend incarcerated would be approximately 6½ years unless the defendant's own misconduct or failure to comply with regulations prevented him from receiving sentence credits.

¶ 41 The defendant filed a motion to reconsider the sentencing decision and argued that the circuit court improperly denied the defendant the right to call a witness, the circuit court considered the charges where the defendant was found not guilty as factors in aggravation, the total sentence in the IDOC was excessive, and four years of probation exceeded the maximum limit allowed by the statute. During the hearing, defense counsel argued that the maximum term of probation for a

12

Class 3 felony was 30 months. The circuit court denied the motion to reconsider. This appeal followed.

¶ 42                                    II. ANALYSIS

¶ 43     On appeal, the defendant argues that he was denied a fair trial where the circuit court denied a recess to allow the defendant to consult with an expert witness. In the alternative, the defendant argues ineffective assistance of counsel where his counsel prematurely dismissed the expert witness. The defendant additionally argues three issues related to the circuit court's sentencing decision. The defendant claims that the circuit court erred by entering a sentencing decision for Class 3 possession of child pornography which exceeded the maximum term of probation and entering an excessive sentence of 13 years in the IDOC followed by 4 years of probation. We note that the defendant raised an issue with the circuit court issuing one year of mandatory supervised release; however, the defendant withdrew that issue.

¶ 44                          A. Consultation With Defense Expert

¶ 45     We first address the defendant's claim that the defendant was denied a fair trial by denying a recess to consult with his expert witness. Ordinarily, a party must raise an issue at trial and in a written posttrial motion to preserve an issue for review, and the failure to do so forfeits the issue on appeal. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 16. The defendant acknowledges that he did not include this issue in a posttrial motion and requests plain error review.

¶ 46     The plain-error doctrine allows review of unpreserved error where "a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant (first-prong plain error) or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process (second-prong plain error)." *People v. Schoonover*, 2021 IL 124832, ¶ 27. Before addressing the

13

defendant's plain-error argument, we must first determine whether error occurred. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009). Plain error claims are reviewed *de novo*. *Schoonover*, 2021 IL 124832, ¶ 26.

¶ 47    "After trial has begun a reasonably brief continuance may be granted to either side in the interests of justice." 725 ILCS 5/114-4(f) (West 2022). The circuit court's decision to grant or deny a motion for a continuance to secure the presence of a witness is reviewed for an abuse of discretion. *People v. Rios*, 2022 IL App (1st) 171509, ¶ 86. The circumstances regarding a denial of a continuance are evaluated on a case-by-case basis. *Rios*, 2022 IL App (1st) 171509, ¶ 86. Factors that the circuit court may consider in determining whether to grant a defendant's continuance in a criminal matter include the defendant's right to a speedy, fair, and impartial trial, the interests of justice, and the defendant's diligence in his request. *People v. Walker*, 232 Ill. 2d 113, 125 (2009). The circuit court may additionally consider other relevant factors such as, the explanation of why defense counsel was unprepared, the history of the case, the complexity of the matter, the seriousness of the charges, judicial economy, and the inconvenience to the parties and witnesses. *Walker*, 232 Ill. 2d at 125-26. A conviction will be reversed where "the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and thereby prejudiced his rights." (Internal quotation marks omitted.) *Walker*, 232 Ill. 2d at 125.

¶ 48    The defendant had private counsel and had hired Andrew Garrett, an eDiscovery/computer forensic expert, to assist with technical aspects related to the information extracted from the defendant's phone. Prior to trial, the defendant received a continuance to consult with his expert and received a continuance for the expert to be present during trial. The expert was present in court at the start of the trial and allowed to sit next to defense counsel. The expert, however, was released by defense counsel before the State presented its evidence regarding the Cellebrite extraction data.

14

The record does not reflect the reason behind the release of the defendant's witness, and the defendant had indicated during trial that he did not intend to call Garett as a witness.

¶ 49    After the defendant's expert was released, the state police officer, Copsey, testified that he used the Cellebrite machine on the cell phones of the defendant and G.H. to create the extraction reports. Copsey was released as a witness after the State confirmed with the defendant that he did not intend to call his expert witness. Bowling, the investigating officer, testified that he received and analyzed the extraction report. During his testimony, defense counsel questioned Bowling on whether the extraction report could include photographs found on the phone that were not accessible by the defendant. Bowling did not have sufficient knowledge of Cellebrite to answer defense counsel's questions regarding the accessibility of deleted data. The circuit court allowed the State to recall Copsey to explain how to interpret the deletion column of the Cellebrite extraction report. Copsey returned to the courthouse and testified that same day.

¶ 50    Before Copsey testified, the defendant informed the circuit court that he did not intend to present any witnesses, unless his expert witness could potentially testify that the photographs listed on the report were not accessible to the defendant. The circuit court found that the defendant had not been barred from eliciting that information from his witness, but he had chosen to release his witness. The circuit court then took a recess until Copsey returned to the courthouse. The record does not indicate whether the defendant had attempted to contact his expert witness to return to the courthouse during that recess.

¶ 51    After Copsey testified, the circuit court inquired whether the defendant still intended to rest his case. At that point, the defendant requested a recess to consult with his expert witness. Defense counsel acknowledged that he had released his witness, and he was unable to explain whether his expert would present information different from the State's witness. The circuit court considered

15

the defendant had three years to prepare for trial and the issues regarding the extraction data should have been addressed before trial. The circuit court found that there was no indication that the defendant's expert, which the defendant had released, would testify any differently from the State's witnesses that were present.

¶ 52    The circuit court additionally allowed both parties to submit supplemental written closing arguments, thus allowing the defendant time to consult with his expert. The defendant did not present a different interpretation of the extraction report in his written closing argument. The defendant did not file a posttrial motion after having an opportunity to consult with his expert witness regarding the accessibility of deleted files.

¶ 53    The defendant has not demonstrated that he was diligent in presenting his witness, that his witness would have presented material evidence, or that the defendant was prejudiced by the denial of the continuance to consult with his expert witness. The circuit court did not abuse its discretion in denying a recess and delaying the resolution of the case to consult with an expert, who had been released as a witness and may not have returned to testify. Consequently, we conclude that there was no error in denying the continuance, and thus, no plain error can exist.

¶ 54    In the alternative, the defendant argues that defense counsel was ineffective in failing to preserve the issue for appeal. The defendant further argues that defense counsel was ineffective for prematurely dismissing the defense expert.

¶ 55    When determining whether a defendant was denied effective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient where it fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant such that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Both prongs of the *Strickland* test must be satisfied by the defendant for a finding of ineffectiveness.

16

*People v. Veach*, 2017 IL 120649, ¶ 30. Ineffective assistance of counsel claims are generally reviewed *de novo*. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 91.

¶ 56    To establish deficient performance, the defendant must demonstrate that his trial counsel's performance was "objectively unreasonable under prevailing professional norms." (Internal quotation marks omitted.) *Gunn*, 2020 IL App (1st) 170542, ¶ 94. "A defendant is entitled to competent, not perfect, representation, and mistakes in trial strategy or judgment will not, of themselves, render the representation ineffective." (Internal quotation marks omitted.) *People v. Bell*, 2021 IL App (1st) 190366, ¶ 63. The defendant must overcome a strong presumption that trial counsel's inaction was based on sound trial strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007). Decisions concerning what evidence to present and which witnesses to call are ultimately made by trial counsel and are matters of trial strategy generally immune from ineffective assistance of counsel claims. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79.

¶ 57    When considering the second prong of the *Strickland* test, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gunn*, 2020 IL App (1st) 170542, ¶ 96. Where the evidence against the defendant is overwhelming, the reviewing court will not be persuaded that it is reasonably probable that a jury would have acquitted the defendant in the absence of counsel's alleged errors. *Gunn*, 2020 IL App (1st) 170542, ¶ 96. A court may dispose of an ineffective assistance of counsel claim for insufficient prejudice before reaching the deficiency of counsel's performance. *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991).

¶ 58    Defense counsel presented a defense where the circuit court found that the State did not meet its burden on four of the six child pornography counts. The defendant was found not guilty on those four counts. No argument was presented on whether the defendant's expert could have

17

countered the testimony of the State's witness regarding the accessibility of photographs regarding the remaining two child pornography charges. The defendant has not demonstrated how the outcome would have changed if the expert witness was present for the entire trial and testified.

¶ 59    Because the defendant has not satisfied the prejudice prong, we do not need to address whether defense counsel's performance was deficient. The defendant has not demonstrated that he was denied effective assistance of counsel.

¶ 60                                    B. Sentencing

¶ 61                            1. Maximum Term of Probation

¶ 62    The defendant argues that the circuit court exceeded the maximum authorized term of probation for the Class 3 possession of child pornography under count VIII. The period of probation for a Class 3 felony shall not exceed 30 months. 730 ILCS 5/5-4.5-40(d) (West 2020). The defendant was sentenced to 4 years of probation, which exceeds the maximum authorized term. The State concedes this issue.

¶ 63    A reviewing court may modify a sentence ordered in error without remand to the circuit court. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 113. Therefore, pursuant to our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), we hereby amend that portion of the circuit court's order to reflect that the defendant's child pornography sentence on count IV is reduced to 30 months of probation, which shall begin upon release from prison and end 30 months later and subject to the terms outlined in the circuit court's order.

¶ 64                               2. Excessive Sentence

¶ 65    The Class 3 sentencing range for imprisonment is not less than 2 years and not more than 5 years, or up to 30 months of probation. 730 ILCS 5/5-4.5-40(a), (d) (West 2020). The Class 4

sentencing range for imprisonment is not less than 1 year and not more than 3 years, or up to 30 months of probation. 730 ILCS 5/5-4.5-45(a), (d) (West 2020).

¶ 66 The defendant was sentenced to five years on count I, a Class 3 felony; three years on count II, a Class 4 felony; five years on count VII, a Class 3 felony; and probation on count VIII. As discussed above, the defendant's probation term has been reduced to 30 months of probation. The defendant was sentenced to a total of 13 years of imprisonment, followed by 30 months of probation. The maximum sentence that the defendant could have received was 18 years' imprisonment. Additionally, consecutive sentences were entered to protect the public. See 730 ILCS 5/5-8-4(c)(1) (West 2020).

¶ 67 "If a sentence falls within the statutory limits, it will not be overturned on appeal absent abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Bunning*, 2018 IL App (5th) 150114, ¶ 16.

¶ 68 When determining an appropriate sentence, the circuit court must consider the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits, and age" and impose a sentence based on the circumstances of each case. (Internal quotation marks omitted.) *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. The circuit court must also carefully consider the statutory factors in mitigation and aggravation. *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). The circuit court, however, is not required to recite and assign a value to each factor considered. *Pina*, 2019 IL App (4th) 170614, ¶ 19. There is a presumption that a circuit court considers all mitigating evidence presented. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 33.

¶ 69    The defendant argues that his aggregate sentence of 13 years' imprisonment followed by probation is excessive where the circuit court failed to account for the nature of the offenses and the defendant's rehabilitative potential. The circuit court, however, considered arguments by the parties, the PSI, which included the defendant's written statement, the victim impact panel, as well as the aggravating and mitigating factors. The circuit court additionally noted that the defendant was found not guilty on four of the counts where the circuit court could not determine the age of the children in the photographs. As to those four allegations, the circuit court found that the State had not met its burden of proof and they were not considered as a factor.

¶ 70    The circuit court found aggravating factors based on the defendant's history of prior delinquency and that his conduct caused or threatened serious harm to G.H. The defendant had been convicted in Missouri for attempt enticement of a minor and attempt statutory sodomy. G.H. testified at trial and the circuit court was able to observe her demeaner. Her testimony included that she had a panic attack when the defendant appeared at her place of work. She was afraid to make a victim impact statement.

¶ 71    The circuit court rejected the defendant's arguments in mitigation and specifically addressed the argument that the defendant's conduct was not a result of circumstances likely to occur again. The recidivism risk posed by sex offenders is "frightening and high." (Internal quotation marks omitted.) *People v. Coty*, 2020 IL 123972, ¶ 28. The defendant previously committed a similar crime in Missouri, and then committed the offenses in this case shortly thereafter.

¶ 72    The circuit court discussed the aggravating and mitigating factors raised by the parties. We presume that the trial court considered all of the mitigating information. See *Abrams*, 2015 IL App

20

(1st) 133746, ¶ 33. The circuit court did not abuse its discretion where the sentences imposed were within the sentencing guidelines.

¶ 73                                    III. CONCLUSION

¶ 74    For the foregoing reasons, we affirm the judgment of the circuit court of Fayette County as modified.

¶ 75    Affirmed as modified.