2024 IL App (1st) 241512-U

No. 1-24-1512B

Order filed October 29, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 4759 |
| | ) | |
| JULIE MERAR, | ) | Honorable |
| | ) | Anjana Hansen, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's findings in its detention order were not against the manifest weight of the evidence, and the court's decision to grant the State's petition for pretrial detention was not an abuse of discretion. Affirmed.

¶ 2    Defendant, Julie Merar, appeals from an order under which the circuit court determined that defendant should be detained pending trial. Defendant argues on appeal that: (1) the State's petition for pretrial detention did not give defendant reasonable notice; (2) the petition was not timely; (3) the State failed to tender copies of defendant's criminal history, statements, or police

reports to defense counsel; and (4) the State failed to meet its burden that no condition of pretrial release could mitigate the threat she posed to the safety of a person or the community, or her willful flight. For the following reasons, we affirm.

¶ 3                                 I. BACKGOUND

¶ 4      Defendant was arrested on April 11, 2023, in Skokie, Illinois. She was charged with possession of a firearm without a Firearm Owner's Identification (FOID) card and unlawful vehicular invasion.

¶ 5      On April 12, 2023, a hearing was held in which the State explained the nature of the allegations as follows. The victim, Jason Sweas, worked as a physical therapist in Skokie, and defendant had been a patient of his since December 2022. During a January 2023 session, defendant made statements of a sexual nature to the victim. The victim advised defendant that her statements were inappropriate and that she would have to see another therapist if the conduct continued.

¶ 6      On April 4, 2023, defendant attended another physical therapy appointment, during which she made sexual advances towards the victim. The victim terminated the session and notified a supervisor. All future sessions with the defendant were cancelled, and defendant was informed of those cancellations on April 5, 2023.

¶ 7      On April 7, 2023, the victim began receiving text messages and emails from various numbers and addresses, referencing the physical therapy sessions with the victim. The messages were angry in tone and threatened retaliation through the victim's employer.

¶ 8      On April 11, 2023, the victim was walking towards his car after work at approximately 3 p.m. The victim entered his car, heard banging on the front passenger side door, and saw defendant

standing outside the car pointing a gun at him. Defendant then opened the front passenger door, reached in with the gun, and pointed it directly at the victim.

¶ 9     The victim put the car in reverse and drove around the building. He reentered his place of work and called 9-1-1. Northbrook Police Department located defendant's vehicle at approximately 4 p.m. in Northbrook, Illinois. Police officers recovered a firearm from defendant's purse, with a round in the chamber. Additional ammunition was found inside her purse as well. Defendant did not have a valid FOID card.

¶ 10    Defendant had previously been charged in 2014 with stalking and cyberstalking, but the charges were reduced to electronic harassment and disorderly conduct. The victims in that case were a treating physician of defendant's and the physician's wife. Defendant was sentenced to 18 months of conditional discharge.

¶ 11    The State asked for electronic monitoring to be imposed on defendant as a condition of bail, but the trial court denied that request. The trial court set the bond amount at $200,000 and included a "no contact" condition of bond, whereby defendant could not have any contact with the victim or his family.

¶ 12    On May 8, 2023, a hearing was held in which the State noted that defendant's husband had contacted the Prospect Heights Police Department indicating that defendant left last week after writing a note. She left her keys, her phone, and her watch at home, she withdrew $3,000 from the bank, and "has since been MIA." The trial court issued a "no-bail warrant."

¶ 13    Later that afternoon, a hearing was held via video conference, wherein defendant appeared and stated that she was in Illinois. The State then requested a change of bond circumstances and asked for electronic monitoring. The case was continued to May 16, 2023.

¶ 14    On May 16, 2023, the State filed a petition for a hearing on violation of bail bond conditions and application to increase the amount of bail. The State alleged in the petition that on May 8, 2023, defendant "committed the offense of absenting herself from the court's jurisdiction" and that a police report had been filed on May 13, 2023, regarding video and audio recordings of the victim that defendant posted to YouTube. The State noted that the victim and his family were very concerned, and that at a minimum, the State was requesting electronic monitoring. The trial court acknowledged that the posts on YouTube were an indirect violation of the "no contact" condition of bond. The trial court denied the electronic monitoring request, but entered a "stalking, no contact order." The case was continued to July 6, 2023.

¶ 15    On June 29, 2023, a hearing was held in which the State noted that it was contacted by the Prospect Heights Police Department the day before, indicating that it had initiated a missing person investigation in connection with defendant, based on suicidal behavior and prior depression. Three weeks prior, messages had been exchanged between defendant and an adult male living in Florida. The messages were conducted over a "self-declared message center for suicidal people." Defendant left videos on her computer for her husband and children labeled "Good-Bye."

¶ 16    The State requested leave to file a violation of bail bond in that defendant left the jurisdiction without permission and posted new videos of the victim to YouTube. The trial court granted the State leave to file the violation of bail bond. The court stated it would issue a bond forfeiture warrant, "no bail."

¶ 17    The next court date that appears in the record took place almost a year later, on June 12, 2024. At that time, defendant was in custody. The State asked for leave to file a petition to detain defendant under the Pretrial Fairness Act (Act). 725 ICLS 5/110-6.1(a)(1.5) (West Supp. 2023) (amended by Public Act 101-652 (eff. Jan. 1, 2023)). The petition alleged that defendant posed a

real and present threat to the safety of the victim and had a high likelihood of flight. The State noted that defendant had reached into the victim's car with a gun and pointed it at the victim and had absconded the jurisdiction to Florida where she was arrested for attempted murder. The State also noted that defendant violated the stalking and no contact order by continuing to post audio and video recordings of the victim on YouTube.

¶ 18 At the hearing, defense counsel indicated that she had not been given the petition, and asked to pass the case so she could review it. After a short break, the case was recalled and all the parties indicated they were ready to proceed.

¶ 19 The State noted that at the last hearing, defendant had fled the jurisdiction to Florida and a bond forfeiture warrant had been issued. Defendant was subsequently arrested in Florida on July 7, 2023, in possession of a firearm. Deputies had tracked defendant to a hotel, and as the deputies approached defendant, she began to pull a handgun out of her pocket. As an undercover detective tried to grab the handgun, it fired and missed the detective, striking a wall. Defendant was arrested and charged with attempted homicide of a law enforcement officer and aggravated assault on an officer. The State indicated that it was "not sure [what] the final resolution of the case in Florida was," and that defense counsel could address what defendant actually pled to.

¶ 20 The State indicated that it was seeking detention for defendant because of the nature of the charges in this case, the fact that she left the jurisdiction without approval, she acquired another firearm despite not being allowed to own one by law, she put officers in Florida in danger, and due to her unwillingness to abide by the conditions of her bail.

¶ 21 Defense counsel objected to the timing of the petition, arguing that most of the information in the State's argument was available at the last hearing and defendant was still under the old bond system. The court noted that the Act went into effect in September 2023, to which defense counsel

responded that the State could have filed their detention petition at that time. The court responded that there was case law indicating that the State could petition for detention on the first date the State has available when the defendant is present in court, which would be "today."

¶ 22    Defense counsel also argued that the State did not tender any reports from Florida to her. The prosecutor responded that the information she received came from a local news report that she printed, and that she did not receive any police reports. She stated that she would be happy to get the police reports if defense counsel wished to continue the case. Defense counsel asked the court not to take into consideration anything that happened in Florida because "we don't have any of those reports before the Court to properly rely on."

¶ 23    Defense counsel further indicated that she had a report from Pathlight Mood and Anxiety Center, a residential treatment center, which indicated that defendant was to be admitted into an intensive daily treatment center in Illinois on June 12, 2024. Counsel explained that she also had a report from Dr. Jeffrey Danzinger, who interviewed defendant while she was in Seminole County Jail in September 2023, in which he stated that she suffered from serious and longstanding psychiatric issues. Defense counsel also had a letter from a psychologist who stated that defendant suffered from shingles while in custody, as well as Complex Regional Pain Syndrome.

¶ 24    Defense counsel stated that defendant had lost a considerable amount of weight while in custody and that she was facing serious mental health issues that were being exacerbated by lack of treatment. Counsel stated that a placement was available for her at Pathlight immediately. She asked the court to deny the petition to detain defendant and allow her to be released so she could be admitted to Pathlight in Chicago.

¶ 25    The court asked about the Florida case, to which defense counsel answered that it had been "resolved." Defense counsel also stated that one of the conditions of her probation was to get psychological treatment as soon as possible.

¶ 26    The court then found that the proof was evident or the presumption great that defendant committed the offense of aggravated unlawful use of a weapon having no FOID card, as well as unlawful vehicular invasion. The court found that defendant posed a real and present threat to the victim in this case, in that when he was leaving work, defendant approached him with a gun in her hand, pointing it at him. The court noted that part of defendant's condition of bond was to surrender firearms and not leave the jurisdiction. She violated both conditions. She was also not to have contact with the victim or his family, which she violated by posting videos on YouTube. The trial court stated that no condition or combination of conditions could mitigate the real and present threat to the safety of the victim in this case, and no conditions set forth could mitigate her willful flight. The trial court ordered defendant to be detained.

¶ 27    Defense counsel filed a motion for relief from pretrial detention, and a hearing was held on that motion. During the hearing, defense counsel argued that the State did not prove by a clear and convincing standard that no condition or combination of conditions could mitigate the threat to the safety of the victim or mitigate willful flight. Defense counsel noted that defendant was in a wheelchair and could barely walk. She argued that the jail did not have the proper equipment to treat her, and lacked medical equipment ordered by her primary care doctor to treat her. Defense counsel argued that defendant was directed by her primary care doctor to have a neurology appointment and physical therapy, none of which had taken place. Defense counsel requested electronic monitoring or "intensive probation pretrial type services."

¶ 28 The trial court, in making its findings, noted that it still had no documentation of defendant's medical issues, documentation from doctors, or information about what treatment facilities were available. The court found that "at this point in time, I do still find that the State has met their burden by clear and convicting evidence," and denied the motion for relief. Defendant now appeals.

¶ 29                                   II. ANALYSIS

¶ 30 The arguments on appeal, as they appear in defendant's motion for relief, are: (1) the State's petition for pretrial detention did not give defendant reasonable notice; (2) the petition was not timely; (3) the State failed to tender copies of defendant's criminal history, statements, or police reports to defense counsel; and (4) the State did not prove by the clear and convincing standard that no condition or combination of conditions could mitigate the present threat to the victim or mitigate willful flight.

¶ 31 Under Section 110-6.1(a)(1.5) of the Act, the State may file a petition to deny a defendant pretrial release, and the circuit court shall conduct a hearing if the defendant is charged with an eligible offense under the Act and it is alleged that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. *Id.* The State has the burden to prove, by clear and convincing evidence, the following relevant propositions:

"(1) the proof is evident or the presumption great that the defendant has committed

an offense listed in subsection (a), and

(2) ***the defendant poses a real and present threat to the safety of any person or

persons or the community, based on the specific articulable facts of the case, by

conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse *** and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case *** or (ii) the defendant's willful flight ***." 725 ILCS 5/110-6.1(e) (West Supp. 2023).

¶ 32 We believe the standard of review of a decision to grant or deny a detention petition under section 110-6.1 of the Code requires a mixed standard of review. In applying a mixed standard of review, we must examine the record to determine whether it contains facts to support the trial court's determinations by clear and convincing evidence. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 35. This court applies the manifest weight of the evidence standard in cases involving questions of fact. *Id.* Because the first two propositions in an appeal from an order granting the State's petition for detention involve factual findings, we will review those two determinations under the manifest weight of the evidence standard. *Id.* A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Id.* ¶ 32. As to the third proposition, "[o]n the circuit court's determination that there were no conditions of release that could mitigate the safety risk, *** an abuse of discretion standard is most appropriate." *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31. "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the circuit court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 33                              A. Reasonable Notice and Timeliness

¶ 34    We first address defendant's arguments regarding notice and timeliness, as they are intertwined. Section 110-6.1(c)(1) of the Act states:

> "(1) A petition may be filed without proper notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released, shall not be detained." 725 ILCS 5/110-6.1(c)(1) (eff. Jan. 1, 2023).

¶ 35    Here, defendant violated the conditions of bail by traveling to Florida back in June of 2023, before the Act came into effect. A bond forfeiture warrant was issued at that time. However, defendant did not appear before the court until June of 2024, because soon after she violated bail by traveling to Florida, she was arrested in Florida for discharging a weapon at a police officer. Accordingly, when the Act came into effect, defendant was in custody, outside of Illinois's jurisdiction. When she was released from custody in Florida and extradited back to Illinois, the State filed a petition for detention the same day she first appeared before an Illinois court since the enactment of the Act and since being arrested in Florida. Accordingly, we find that there was no violation of section 110-6.1(c)(1).

¶ 36    Defendant nevertheless maintains, relying on *People v. Clark*, 2023 IL App (1st) 231770 (reversed and remanded by *People v. Clark*, 2024 IL 130364), that the State should have filed a petition for detention after the Act was enacted in September of 2023, instead of waiting until she was extradited back to Illinois from Florida. However, the appellate court decision in *Clark* that defendant relied on has since been reversed by the Illinois Supreme Court.

¶ 37 In *Clark*, the State filed a criminal complaint against the defendant on August 23, 2023. *Clark*, 2024 IL 130364, ¶ 2. In an *ex parte* hearing, the State appeared before a judge and obtained a warrant for the defendant's arrest. *Id*. The defendant was taken into custody on September 16, 2023, and brought before a judge on September 18, 2023 (the date enforcement of the Act began). *Id*. At that hearing, the State filed a petition to detain the defendant, which the circuit court granted. *Id*. A divided panel of the appellate court reversed the circuit court's order. *Id*. ¶ 3. The majority found that section 110-6.1(c)(1) of the Act required the State to file its petition when it made its *ex parte* appearance before a judge. *Id*. The appellate court found the State's petition to be untimely because it was filed after the State made its first appearance. *Id*. ¶ 3.

¶ 38 Our supreme court noted that the issue before the court was the timing requirement for a petition for pretrial detention without notice to defendant. *Id*. ¶ 14. In resolving the issue, the court had to determine the meaning of the term "the first appearance" as used in section 110-6.1(c)(1), which states, "[a] petition may be filed without prior notice to the defendant at the first appearance before a judge." *Id*.

¶ 39 The court recognized that if the State files a petition for pretrial detention, the detention hearing is to be set and held "immediately" upon the State's verified petition under section 110-6.1(c)(2). *Id*. ¶ 25. "In that case, the court holds a detention hearing at defendant's first appearance before a judge." *Id*. The court found that a hearing held in this manner satisfies the requirement that defendant is physically present, provides the defendant with the benefit of counsel, and provides the defendant with a meaningful opportunity to subject the petition to adversarial testing "because it allows defendant to challenge the State's evidence and present his own evidence in opposition." *Id*.

¶ 40     The court noted that because the hearing is to be held immediately upon the State's petition, filing it at a hearing where defendant was not present in court, would lead to an absurd result because the Act "prohibits the court from holding any hearing to deny pretrial release in defendant's absence." *Id.* ¶ 26. Similarly, in the case at bar, requiring the State to file a petition for pretrial detention while defendant was in custody in Florida, would lead to an absurd result. Accordingly, we find that it was proper for the State to file its petition to deny pretrial release at the first hearing before the circuit court after defendant was extradited to Illinois.

¶ 41     While section 110-6.1(c)(2) permits the court to grant a continuance, in which case the hearing is to be held within 24 to 48 hours of defendant's first appearance, depending on the charged offense, there is no indication from the record that either party asked for a continuance. Moreover, there is no requirement that a continuance be granted. 725 ILCS 5/110-6.1(c)(2) (West Supp. 2023). Accordingly, we reject defendant's arguments regarding notice and timeliness.

¶ 42                           B. Documentation

¶ 43     Defendant's next issue on appeal is that the trial court erred by not requiring the State to tender copies of defendant's criminal history, statements, police reports, or any other substantial evidence relied on by the State during the detention hearing. Section 110-6.1(f)(1) of the Act states:

     "(f) Conduct of the hearings.

          (1) Prior to the hearing, the State shall tender to the defendant copies of the

          defendant's criminal history available, any written or recorded statements,

          and the substance of any oral statements made by any person, if relied upon

          by the State in its petition, and any police reports in the prosecutor's

          possession at the time of the hearing." 725 ILCS 5/110-6.1(f)(1) (West

          Supp. 2023).

¶ 44 Defendant argues that the State "relied heavily" on defendant's flee to Florida and her subsequent case in Florida without supplying "official charging documents or police reports." However, the State's petition for detention merely states that defendant absconded to Florida in violation of her bail conditions, an arrest warrant was issued, and "defendant was arrested for attempted murder in Florida." While an arrest report was not tendered to defense counsel, the prosecutor explained that the information she received came from a local news report. She never received any reports in the Florida case. Accordingly, there were no reports "in the prosecutor's possession at the time of the hearing" to tender to defense counsel. 725 ILCS 5/110-6.1(f)(1) (West Supp. 2023). We find that the trial court did not err by failing to require the State to tender copies of police reports it did not have in its possession.

¶ 45 Defendant's reliance on *People v. Mezo*, 2024 IL App (3d) 230499, does not convince us otherwise. In *Mezo*, the State relied on a Law Enforcement Agency Data System (LEADS) report it *had in its possession* and told the court that the defendant had a pending aggravated battery charge in Champaign County. (Emphasis added.) *Id.* ¶ 4. The court acknowledged that under the PFA, "if you have evidence of priors, you do have to disclose that with your discovery." *Id.* The hearing continued, and the State informed the court of the defendant's prior convictions. *Id.* On appeal, the defendant contended that he was denied a fair hearing because the State improperly relied on the defendant's criminal history as its primary basis for detention when it had not provided a criminal history to the defense. *Id.* ¶ 9. This court found that the Act required the State to tender a copy of the defendant's criminal history that it had in its possession, and the court improperly relied on the State's oral presentation of the defendant's criminal history to support its findings that the defendant was a real and present threat to the community. *Id.* ¶ 10.

¶ 46 In the case at bar, on the other hand, the State did not have any documentation in its possession that was required to be tendered to defense counsel. As the prosecutor noted during the hearing, she relied on information she found on the internet about defendant's arrest in Florida. The Act does not require the State to provide news stories to defense counsel at pretrial detention hearings, and therefore the trial court did not err in failing to make the State tender certain documents to defense counsel.

¶ 47 C. Mitigation of Threat or Willful Flight

¶ 48 Defendant's final argument is that the State failed to prove by a clear and convincing standard that no condition or combination of conditions could mitigate the present threat to the safety of any persons or the community or mitigate willful flight. Section 110-6.1(e) of the Act states:

"(e) Eligibility: All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence that:

(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

(2) for offenses listed in paragraphs (1) through (7) of subsection (a), the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse ***, and

(3) no condition or combination of conditions set forth in subsection (b) of Section 11-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific

- 14 -

articulable facts of the case, for offense listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a)." 725 ILCS 5/110-6.1(e) (West Supp. 2023).

¶ 49 We find that the State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of the victim and the community. Prior to her arrest, defendant had sent angry texts and emails to the victim. On the day of her arrest, defendant waited for the victim outside of his place of work and pointed a gun at him. She was later arrested with a gun in her purse, despite not owning a FOID card. Following defendant's arrest and release on bail, she continued to surveil the victim, despite being ordered to have no contact. This is evidenced by the audio and video recordings that defendant posted on YouTube. Further, she was arrested in Florida with a gun, after being ordered to surrender all guns following her arrest. These specific, articulable facts show with clear and convincing evidence that no conditions or combination of conditions could mitigate the present threat to the safety of the victim or the community.

¶ 50 Defendant's reliance on *People v. Stock*, 2023 IL App (1st) 231753, does not convince us otherwise. In *Stock*, the court found that the State failed to meet its burden of proof, and the trial court erred in its determination, that no condition or combination of conditions would suffice to mitigate any threat. *Id*. ¶ 15. The court found that its analysis was simply on this issue because "the State presented no evidence on this element." *Id*. ¶ 17. It noted that Section 110-10(b) provides a number of discretionary conditions that the trial court may impose, "which include but are not limited to (1) restrictions on leaving Illinois without leave of court, (2) prohibitions on possessing firearms or other dangerous weapons, and (3) prohibitions on communicating with particular persons or classes of persons." *Id*. ¶ 16; 725 ILCS 5/110-10(b) (West Supp. 2023). The court found

that the State did not discuss these conditions. *Id*. ¶ 17. It further noted that the bare allegations that defendant committed a violent offense were not sufficient to establish this element. *Id*. ¶ 18.

¶ 51    *Stock* is in stark contrast to the case at bar. Here, the State specifically discussed defendant's continued contact of the victim despite "no contact" orders and defendant's possession of a gun after being ordered to surrender all guns. Accordingly, we find *Stock* inapposite and find that the State met its burden by clear and convincing evidence, and the trial court did not abuse its discretion in finding, that no condition or combination of conditions could mitigate the real and present threat to the victim.

¶ 52    The State also proved by clear and convincing evidence that no condition or combination of conditions could mitigate defendant's willful flight. Defendant twice absented herself from the jurisdiction after being released on bail. The second instance involved a missing person investigation initiated by police in connection with defendant's disappearance. She left her husband and children "goodbye" notes and purchased a flight to Florida. A few days later, she was arrested in Florida. These specific, articulable facts show that defendant has an inability or unwillingness to comply with the terms and conditions of release.

¶ 53    To the extent that defendant argues, relying on *Stock*, that the trial court did not explain in its order why less restrictive conditions would not avoid a real and present threat to the safety of any person or community, or willful flight, we reject that argument as well. In *Stock*, the court noted that section 110-6.1(h)(1) of the Act requires the trial court to make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, "including why less restrictive conditions would not avoid a real and present threat to the safety of any person *** based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(h)(1) (West Supp. 2023). The

*Stock* court found that the trial court's finding that no conditions of pretrial release could mitigate the threat was against the manifest weight of the evidence because in the blank space allotted for this particular finding on the form order, the trial court wrote, "The defendant shot a firearm at the complaining witness." *Stock*, 2023 IL App (1st) 231753, ¶¶ 20-21.

¶ 54    In the case at bar, however, the trial court specifically noted, in addition to the fact that defendant waited for the victim outside his place of work and pointed a gun at him in his car, that defendant contacted the victim even though she had a "no contact" order, and that defendant twice was admonished not to leave the jurisdiction, yet ended up in custody in Florida. We find that the trial court adequately explained its reasoning in its written order, and did not abuse its discretion in finding that no condition or combination of conditions of pretrial release could mitigate the threat defendant posed, or her willful flight.

¶ 55                                    III. CONCLUSION

¶ 56    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 57    Affirmed.