2025 IL App (1st) 250945

No. 1-25-0945B

Filed September 3, 2025

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 24 CR 202 |
| v. | ) | |
| | ) | Honorable |
| TRAIVEON SHORTS, | ) | David L. Kelly and |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judges, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court, with opinion.
Justices Lampkin and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Traiveon Shorts appeals from the circuit court's order granting the State's petition for detention. Shorts was arrested and charged after Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act), was enacted.[1] For the following reasons, we reverse and remand for a new hearing.

¶ 2                                   I. BACKGROUND

¶ 3     Shorts was arrested and charged with aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2022)) and other minor traffic offenses following a December 9, 2023,

_____

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; see Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023).

traffic stop in the 4600 block of West Van Buren Street in Chicago, Illinois.

¶ 4     The next day, the State filed a petition for a pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)). The petition alleged that Shorts committed a non-probational felony ("AUUW, no FOID or CCL") based on his background, as listed in section 110-6.1(a)(1) of the Code, and that he poses "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(a)(1). Specifically, the State relayed that Shorts "was in possession of a loaded gun while on parole for a home invasion." The petition further alleged that no combination of conditions could mitigate the risk Shorts poses.

¶ 5     The court held a detention hearing the same day. A pretrial officer stated that Shorts scored a four out of six on the "new criminal activity scale" and a three out of six on the "failure to appear scale." At the start of the hearing, the court asked the State what it had tendered to the defense. The State responded, "we have tendered the reports in this matter as well as the defendant's background."

¶ 6     The State then proceeded by proffer, noting that although Shorts is charged with AUUW, he should be charged with unlawful use of a weapon by a felon (UUWF), given his background. On December 9, 2023, at approximately 5:30 p.m., police officers on routine patrol observed Shorts, without a seatbelt, driving a vehicle with no license plate light. The officers attempted to curb Shorts's vehicle, and they observed him make furtive movements, including laying his head down. Shorts then made a quick stop, turned off his vehicle, jumped out, and locked the vehicle. Shorts was unable to provide a driver's license. Officers then observed, in plain view on the front floorboard, a "Glock 27, 40 caliber with an extended magazine." Shorts had neither a Firearm Owner's Identification Card (FOID) nor a Concealed Carry License (CCL). At the time of the traffic stop, Shorts was on parole for a home invasion (for which he received seven years'

imprisonment), with a projected discharge date of August 8, 2026. He had one prior bond forfeiture from 2019.

¶ 7    The court questioned the State regarding the facts of Shorts's previous home invasion conviction. The State noted it had no information regarding such but that they could obtain it.

¶ 8    Defense counsel countered that while Shorts is alleged to have been in possession of a gun, there was no indication he used or discharged the weapon or that he threatened anyone with it. Counsel argued that this weighs against the State's argument that Shorts poses a safety threat. Moreover, counsel contended that Shorts's parole status is relevant for the parole board but should not weigh in favor of detaining him. Twenty-two-year-old Shorts is a life-long Cook County resident who cares for his two young children. He resides with his mother, sister, and brother and attended high school. He has a limited criminal history and is looking for work. Last, defense counsel highlighted that Shorts is charged with a nonviolent act and argued that any potential threat could be mitigated with various conditions.

¶ 9    The State then provided facts regarding the prior home invasion conviction. On March 31, 2021, at approximately 10 a.m., Shorts and other co-offenders entered the first-floor apartment of a 63-year-old male while possessing firearms. The case was then passed briefly for the State to review its file. When the case was recalled, the State explained that Shorts and three other offenders were involved in a disturbance outside the victim's apartment. When the victim confronted Shorts regarding the noise, the co-offenders went into the victim's unit and pistol whipped the man, while demanding money. One of the offenders removed the victim's wallet and cell phone from his person. The victim's 50-year-old wife then arrived home and was pistol whipped upon her entrance to the apartment. She had a firearm pointed at her and suffered a laceration and bleeding. A third victim then entered the apartment and observed the firearm, before it was pointed at him as well. The offenders shot the victim's dog and then exited the apartment. They entered the male victim's

Cadillac and began to drive away. When the offenders observed the female victim calling 911, they returned to the residence and absconded with the victim's phone.

¶ 10        Defense counsel responded that the State had described "a number of acts" from the home invasion offense but had failed to indicate if Shorts was the offender who committed those acts. Further, counsel stated that—based on the specific, articulable facts of this case—the State failed to meet its burden to prove that Shorts is a safety risk.

¶ 11        Prior to ruling on the detention petition, the court noted the State's intention to upgrade, by indictment, Shorts's AUUW count to a UUWF count. The court then found the proof evident or the presumption great that Shorts possessed the firearm. It noted that possessing a firearm alone may not make a person a danger, but explained that this possession, in conjunction with Shorts's past home invasion conviction, demonstrated that he posed a real and present threat to the safety of the community. As to possible mitigating conditions, the court found that because Shorts was released on parole when this arrest occurred, there were no conditions that could mitigate the risk Shorts poses. The court entered a written detention order reflecting its findings and mandating that Shorts be detained during the pendency of his trial.

¶ 12        On April 25, 2025, Shorts filed a motion for relief.[2] See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Shorts argued that the court erred by permitting the State to proceed with a proffer of Shorts's prior home invasion offense without tendering a report of that case to defense counsel, in violation of section 110-6.1(f)(1) of the Code. See 725 ILCS 5/110-6.1(f)(1) (West 2022). Further, he contended that the State's and court's seeming reliance on the fact that he would be charged with a different offense based on his felon status was improper. In the alternative, he claimed that

---

[2]In his motion, Shorts notes that he was remanded to the custody of the Illinois Department of Corrections (IDOC) due to his violation of his mandatory supervised release (MSR) terms. However, he has since completed his IDOC sentence and is being held solely on the instant case.

defense counsel was ineffective for failing to object at the detention hearing to the State's use of the home invasion report.

¶ 13     The court held a hearing on Shorts's motion on May 7, 2025. Defense counsel raised two main arguments—the court incorrectly relied on the State's proffer regarding the home invasion offense and over-relied on the prior felony conduct. Specifically, counsel argued that the State failed to tender a copy of the relied upon report to defense counsel. Due to the clearly harmful error, counsel noted that a new hearing was warranted but instead argued that Shorts should receive a "conditions hearing," rather than a new detention hearing.

¶ 14     The State countered that the motion should be denied, since defense counsel failed to object to the State's failure to tender at the original detention hearing. It argued that attorneys from the Office of the Public Defender "know to ask for items or to object when they haven't received something." Moreover, the State noted that it had simply responded to the court's inquiry regarding the home invasion offense and had not relied upon those facts in the detention petition itself. The State further speculated that the proffer was given from an "internal State's Attorney document."

¶ 15     In rebuttal, defense counsel provided the court with a copy of the transcript from December 10, 2023. He noted that he is unaware of what the State used to proffer the facts of the home invasion offense but speculated it may have been an arrest report. Nonetheless, counsel acknowledged that the case law does not support granting a "conditions hearing," but that Shorts is entitled to a new detention hearing.

¶ 16     In its oral ruling, the court noted that Shorts had a prior felony conviction for home invasion and was on parole at the time of the instant offense. Finding that to be "a sufficient felony background," and noting there was "no distortion by the State or withholding" of reports, the court determined that Shorts received a fair and proper detention hearing and upheld the earlier detention order.

¶ 17    Shorts filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024).

¶ 18                                    II. ANALYSIS

¶ 19    Shorts opted to file a memorandum with this court. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support). Therein, he argues that he was denied a fair detention hearing where the State violated section 110-6.1(f)(1) of the Code by failing to tender copies of the relied-upon home invasion report(s) to defense counsel. Despite the State's failure to provide copies of Shorts's criminal history, it improperly relied upon this history as its primary basis for detention. By extension, Shorts contends, the court erred in using the proffered criminal history to justify his pretrial detention.

¶ 20    The State filed a responsive memorandum, arguing that Shorts has forfeited and waived the issue, as defense counsel failed to object to the State's proffer during the initial detention hearing. The State posits that Shorts's assertion in his memorandum—that he failed to raise the argument the State violated section 110-6.1(f) in his motion for relief—is dispositive proof that the issue is waived. Further, the State argues that this issue cannot be reviewed for plain error, where Shorts requested such in the motion for relief but not in his memorandum before this court. Forfeiture and waiver aside, the State argues Shorts is not entitled to relief because no error occurred, where Shorts has not demonstrated that the State's proffer came from police reports or that they had those reports in their possession during the detention hearing.

¶ 21    "Pretrial release is governed by article 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 *et seq.* (West 2022)). Pursuant to the Code, "[i]t is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not

commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id.* The court may deny pretrial release only upon a verified petition by the State and following a hearing. *Id.* § 110-6.1(a).

¶ 22    It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3). Moreover, section 110-6.1(f)(1) provides that, "the State *shall* tender to the defendant copies of the defendant's criminal history available, any written or recorded statements, *** and any police reports in the prosecutor's possession at the time of the hearing." (Emphasis added.) *Id.* § 110-6.1(f)(1).

¶ 23    Shorts's argument requires us to interpret section 110-6.1(f)(1) of the Code. When we interpret a statute, our primary objective is to ascertain and give effect to the legislature's intent. *People v. Schoonover*, 2021 IL 124832, ¶ 39. The best indication of the legislature's intent is the plain language of the statute itself, and we "will not depart from the language by 'reading into it exceptions, limitations, or conditions.' " *Id.* (quoting *People v. Roberts*, 214 Ill. 2d 106, 116 (2005)). We review issues of statutory construction *de novo*. *De novo* review "means that the reviewing court performs the same analysis a trial judge would perform." *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18.

¶ 24    Here, both parties acknowledge that the State never tendered the defense a copy of any report regarding Shorts's home invasion conviction. Nevertheless, the State contends that Shorts has forfeited review of this contention, due to defense counsel's lack of objection during the

December 10, 2023, hearing. At the hearing, defense counsel responded to the State's proffer and noted that the State had described a number of acts but failed to indicate which offender was responsible for the acts committed. More importantly, Shorts has not raised this issue for the first time on appeal. In his motion for relief, Shorts argued that the court "erred by permitting the State to proceed with a proffer of Mr. Shorts'[s] prior home invasion without tendering any report(s) of that case to Defense counsel." At the April 2025 hearing on the motion for relief, defense counsel expounded on this argument and relied upon *People v. Ramyyeh*, 2024 IL App (1st) 240299, in support of his claim that the State's error warrants a new hearing. In the alternative, defense counsel briefly noted he was arguing that counsel was ineffective for failing to more directly object to the report's admittance at the December hearing. Under these circumstances, we find this issue was properly preserved for review.

¶ 25       We agree with Shorts that the State should have tendered the report from his prior home invasion offense, as is required by the plain text of section 110-6.1(f)(1) of the Code. See 725 ILCS 5/110-6.1(f)(1); *People v. Mezo*, 2024 IL App (3d) 230499, ¶ 10; *Ramyyeh*, 2024 IL App (1st) 240299, ¶ 20 (where the State "indisputably had possession of the report and relied on the report during the detention hearing," the State "had an obligation to tender that report to the defense"). The record does not clarify whether the State initially had the report in its possession or if it acquired the report subsequent to the court's questioning. Regardless, it is clear the State had possession of the report during the pendency of the detention hearing. Rather than focus on the fact that Shorts was on MSR during the commission of the instant offense (and any implication that may have on his ability to follow the law and comply with conditions), the State instead focused nearly the entirety of the detention hearing on the facts of the prior offense—gleaned from an untendered report. While it is unclear from the record what type of report the State relied upon in offering its home invasion proffer, it is nonetheless apparent that the State relied heavily on the

facts surrounding that offense to meet its statutory burden under section 110-6.1. See 725 ILCS 5/110-6.1(e)(2), (3) (West 2022). Consequently, the State failed to comply with section 110-6.1(f)(1) of the Code. See *Ramyyeh*, 2024 IL App (1st) 240299, ¶ 20.

¶ 26    We are unpersuaded by the State's reliance on *People v. Merar*, 2024 IL App (1st) 241512-U, where the State in that case did not possess any police reports but briefly mentioned information it had obtained from a local news report out of Florida, regarding the defendant's flight from this jurisdiction. While the State argues that Shorts is responsible for establishing the type of document the State relied upon, this argument is disingenuous. A defendant cannot be expected to extrapolate what type of report the State is relying upon in support of its detention petition, where the State fails to provide this information to the court and further fails to disclose those documents to the defendant. The State's argument, if taken to its logical result, would allow a party to avoid complying with statutory disclosure requirements by neglecting to specify the source of their relied upon information. Here, the State pulled from its file information regarding Shorts's prior offense. Clearly, the State here had "documentation in its possession" (*id.* ¶ 46), which it should have tendered to the defense.

¶ 27    Shorts argues that the proper remedy for the State's failure, in this case, is to remand the matter for a new "conditions hearing," where the court would determine the least restrictive conditions of release. Like the panel in *Ramyyeh*, we "disagree that such a drastic remedy is warranted in this case due to the [State's] noncompliance with section 110-6.1(f)(1) of the Code." *Ramyyeh*, 2024 IL App (1st) 240299, ¶ 22.

¶ 28    Instead, where the State's conduct rendered Shorts's detention hearing deficient, we reverse the circuit court's order and remand the matter for a new detention hearing—compliant with section 110-6.1(f)(1) of the Code—on the State's detention petition. See *Ramyyeh*, 2024 IL App (1st) 240299, ¶ 22; *Mezo*, 2024 IL App (3d) 230499, ¶ 10 (finding the State's failure to

comply with section 110-6.1(f)(1) and (f)(4), and the court's failure to hold the State to its obligation to comply, warrants a new detention hearing).

¶ 29                                    III. CONCLUSION

¶ 30        For the reasons stated, we reverse the judgment of the circuit court of Cook County and remand for a new detention hearing.

¶ 31        Reversed and remanded.

***People v. Shorts*, 2025 IL App (1st) 250945**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-CR-202; the Hon. David L. Kelly and the Hon. Kenneth J. Wadas, Judges, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Gordon J. Kochman, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Joseph Alexander, Assistant State's Attorney, of counsel), for the People. |